# VINCENT LANASA *v.* BESSIE M. BEGGS.
[No. 24, April Term, 1930.]

312

*Decided June 12th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William L. Marbury* and *Fendall Marbury,* with whom was *L. Wethered Barroll* on the brief, for the appellant.

*Edward L. Ward,* with whom was *Stephen W. Leitch* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Bessie M. Beggs, plaintiff, and wife of Clayton D. Beggs, was injured while a passenger of the Yellow Cab Company, by the collision of the cab in which she was riding with a laden two-ton motor truck of Vincent Lanasa, the defendant and a non-resident. The place of the collision was the space formed by the intersection of Mt. Royal Avenue and North Avenue, which are two public streets of Baltimore City. The plaintiff brought two separate but successive proceedings against the alleged wrongdoers to recover for the injury sustained. She had issued out of the Baltimore City Court a nonresident attachment in an action for wrongs independent of contract, in which the amount of the damages claimed was fixed in her affidavit and also in the declaration, at the sum of $5,000, and her approved bond was based upon this amount. Code, art. 9, secs. 44, 39, 4-24. The return shows the attachment was laid in the hands of a garnishee, and that an automobile was seized. The nonresident defendant appeared in the short note case and pleaded *non cul,* and dissolved the attachment by filing a bond in a sum equal to the attached property's value, which was not in excess of the plaintiff's claim, and conditioned to satisfy any judgment which might be recovered against him in the short note case. Code, art. 9, sec. 19. The case went to trial on the declaration, and the plaintiff obtained a judgment for $8,000, which was $3,000 in excess of the amount of the damages upon which the attachment proceedings were founded. The amount of verdict and judgment was rendered possible by the court permitting the plaintiff to amend her declaration by changing the *ad damnum* clause from its original $5,000 to $25,000. The fifteenth bill of exception raises the propriety of this ruling.

The present purpose of an attachment against a nonresident tort-feasor is to compel his appearance to an ordinary action at law, and to secure meanwhile a specific lien on his property attached until a good and sufficient bond is substituted. Code, art. 9, sec. 19. If, instead of suffering the attachment proceedings to take their course, such nonresident wrongdoer take the other alternative and elect to appear to the action, he must be held bound by the principles and rules of pleading and practice which prevail in the court to whose jurisdiction he has voluntarily submitted, since his appearance is by choice, and an action for wrongs independent of contract against a nonresident does not differ in substance and procedure from an action against any other defendant in a suit *in personam* within the general jurisdiction of the court. So, the nonresident defendant may plead any available defense and he is bound by the law and procedure of the forum in the conduct of the case, unaffected by the fact that an attachment was issued or is outstanding. *Hodge & McLane on Attachment,* secs. 68, 69.

The declaration in the action to which the nonresident appeared was amendable under the general statute relative to practice, so that the case might be tried on its real merits and the purposes of justice subserved. This broad privilege is limited by the one provision that entire new parties, either plaintiffs or defendants, can not be made. Code, art. 75, secs. 39-49; 2 *Poe, Pl. & Pr.,* secs. 183-190.

Moreover, the statute regulating attachments provides that the affidavit, short note, declaration, voucher, pleadings, interrogatories, claim of property and all other papers in attachment proceedings may be amended in the same manner, and to the same extent as the proceedings in any other suits or actions at law, so that all attachment cases may be tried on their real merits and the purposes of justice subserved. Code, art. 9, sec. 28.

Within these several statutory provisions, the court commonly exercises its discretion with respect to granting or refusing amendments, without being subject to review. So, it

is clear that the statutes permit the amendment of the declaration whereby the *ad damnum* clause is increased from $5,000 to $25,000, unless the change be violative of the common purpose of both statutes to assure a trial on the merits and to subserve justice. *Warren Bros. v. Kendrick,* 113 Md. 603, 612, 613 (action on bond dissolving attachment); *Booth v. Calahan,* 97 Md. 317; *Kendrick v. Warren,* 110 Md. 47; *DeBearn v. DeBearn,* 119 Md. 429; *Sugar Products Co. v. Kitzmiller,* 137 Md. 652; *De Bebian v. Gola,* 64 Md. 266; *Neptune Ins. Co. v. Montell,* 8 Gill, 228; *Gill v. Physicians etc. Bldg.,* 153 Md. 400; *Union Trust Co. v. Biggs,* 153 Md. 58.

Notwithstanding this broad and general discretionary power of amendment, it has its limitations, and will not be permitted to nullify the plain and explicit provisions of the statute, nor should it be exercised so as to afford either party a clear and undue advantage. See *Farmers etc. Bank v. Harper,* 151 Md. 358, 362, 363; *Commercial Credit Corp. v. Schuck,* 151 Md. 367, 370, 374. The record at bar exemplifies both exceptions. The issuance of an attachment against a nonresident in an action for wrongs independent of contract is conditioned upon a declaration and a bond having first been filed. The law prescribes that the declaration shall set out specially and in detail the tort actually committed and be verified by the affidavit of the plaintiff or some one in his behalf. Furthermore the bond exacted must be with security to be approved by the clerk in double the sum alleged to be due by the defendant, and be conditioned for satisfying all the costs which may be awarded to the defendant, or to any other person interested in the proceedings, and all damages which the defendant, or any other person interested in the proceedings, shall suffer because of the wrongful suing out of such attachment. The subtitle of the statute in question moreover specifies that the practice and pleadings shall in all other particulars conform to the practice and proceedings against nonresident and absconding debtors in actions *ex contractu* for liquidated damages. This provision renders it necessary that an affidavit that the debtor is *bona fide* indebted to the attaching creditor in a sum certain, over and above all

discounts, and is not a citizen of this state, and does not reside therein, shall be made and filed with the other initiative papers. Code, art. 9, secs. 44, 4. The sum alleged to be due is required to be explicitly stated in the affidavit in order that the penalty of the bond in precisely double that sum may be ascertained. The exaction of this bond is not only a protection to the alleged debtor but also a deterrent to false, unfounded, or speculative claims; and, whether the attachment issued be dissolved or not, this bond continues effective until the proceedings set in operation by the attachment are at an end. Hence the statute contemplates that the ratio of two to one between the penalty of the bond and the full amount of the claim of the attaching creditor *ex delicto* or *ex contractu* remain constant throughout the entire litigation. If this were not true, an attaching claimant in an action *ex delicto* or *ex contractu* could deprive the alleged debtor of the protection accorded by the statute by making his original claim less than ultimately intended, and then, after furnishing a bond in the inadequate penalty fixed by the reduced claim, enlarge it by amendment to meet his utmost expectation. A court could not permit such an obvious manoeuvre to defeat the express and definite statutory prerequisite to its writ.

In the appeal at bar, the plaintiff sustained certain injuries from the collision of two alleged tort-feasors. Her damages are entire, though her injuries may have resulted from the negligence of one or both of the wrongdoers. In her action against the resident tort-feasor, she lays her damages at $25,000, but in her attachment against the nonresident tort-feasor for the same injuries she swears her damages are but $5,000, and thereby is only bound to bond in the penalty of but $10,000; and then later obtains leave to amend by raising her damages to $25,000, and so escaped furnishing a bond in a penalty of $50,000. The inference is obvious, and the undue advantage afforded the plaintiff is manifestly in defiance of the spirit of the law and is not even within its letter. While a fundamental object of the statute was defeated when the statutory ratio between the penalty of the bond and the

claim of the defendant was destroyed by the amendment of the *ad damnum* clause of the declaration, yet this result could have been obviated and the right to amend gratified by the requirement that the penalty of the bond be enlarged to correspond with the change in the amount of the damages claimed. Since the decision in *Gill v. Physicians etc. Bldg.*, 153 Md. 397, there is no doubt of the power of the court to permit an amendment in the form of filing a new bond in an increased penalty, and the court at *nisi prius* was in error in permitting the amendment of the declaration without exacting as a prerequisite the filing of a new bond by the plaintiff in the penalty of double the new amount claimed by the proposed amendment.

The case is apparently one of first impression, as the court has not found, nor have counsel furnished, any authority directly in point, but the conclusion adopted is the one consonant with reason and in harmony with the terms and purpose of the statute.

2. The defendant's ninth, tenth, eleventh, and twelfth exceptions are to the refusal of the court to allow the defendant to offer testimony tending to establish an accord and satisfaction of the action brought by the plaintiff against the Yellow Cab Company to recover for the injuries received by the plaintiff in the collision of its cab with the truck of the present defendant. After the rejection of this testimony, the defendant in the instant case obtained leave of the court to file an additional plea in bar, by which it was alleged that on June 1st, 1928, the plaintiff brought a suit against the Yellow Cab Company to recover damages for the same tort which is the cause of action in the pending litigation, and that this suit against the cab company was compromised and settled on February 1st, 1929, by the payment to the plaintiff by the cab company of the sum of $1,032.40, and that on February 14th, 1929, the plaintiff instituted the attachment proceedings now at bar, and that the pleader was unable to obtain this information before the beginning of the trial on November 12th, 1929. After the filing of this plea, the defendant made a motion of *ne recipiatur,* which was sus-

tained. Technically the motion of *ne recipiatur* was too late, as it should have been made before the additional plea was filed. After the filing of the plea, a motion should have been to strike the plea from the file, or its legal sufficiency could have been raised by a demurrer.

After the ruling on the additional plea, the defendant renewed the offer of the documentary testimony excluded by the court, and the propriety of this action is presented by the sixteenth bill of exceptions. The offer of proof included the declaration and plea in the suit of the plaintiff against the Yellow Cab Company for $25,000 damages sustained by her through its negligence in bringing about the collision with the truck of the defendant on this record; the written agreement between the plaintiff and her husband and the cab company bearing date February 1st, 1929; and the check of the cab company for $1,032.40, which was received by the plaintiff and her husband in full payment according to the terms of the agreement. These written instruments were accompanied by the proffer to show that the case of the plaintiff against the cab company and that of her husband against the cab company for loss of her services stood open and pending according to the docket of the court in which the actions were brought.

The written agreement of the plaintiff and her husband was not under seal. Its recitals disclose that certain injuries and damages were sustained by the plaintiff and her husband as a result of the harm done the plaintiff in the collision between the cab of the company and the truck of Vincent Lanasa, the defendant here, on March 16th, 1928; that the plaintiff and her husband had severally begun suits against the company to recover their respective damages arising from this collision, and had or were about to start suit against Lanasa to recover damages for the same wrong, and that, in consideration thereof. and of the payment of the sum of $1,032.40 to them by the cab company, the said plaintiff and her husband promised and agreed (1) that they will not at any time file or institute any suit, action

at law or otherwise against the company claiming any loss or damage growing out of the alleged damage and injury as a result of the collision; and (2) that they will not prosecute or cause to be tried or try to bring to trial their said pending suits, but will assume to pay any and all costs thereof. The agreement declares that the promises of the plaintiff and her husband shall in no way affect their rights or claims to recover damages against Lanasa for losses resulting from the collision, and that the agreement is not intended nor is it to be construed as a release of Lanasa or of the company.

The additional plea and the evidence excluded at *nisi prius* present the question whether or not an accord and satisfaction with one joint tort-feasor is a bar to the prosecution of an action against the other tort-feasor, or the amount paid is merely to be considered in connection with mitigation of damages. Where several persons unite in an act which constitutes a wrong to another, each must assume and bear the responsibility for the misconduct of all, and the party injured may pursue all in one action or any one of them severally, or any number less than the whole without regard to the participation of the others. Nor after suit brought can there be any apportionment of responsibility, whether the suit be against one or all, as each is responsible for the whole and the degree of culpability as between him and his associates is immaterial. Although the rule in this jurisdiction is that the injured party may bring separate suits against the wrong-doers, and proceed to judgment in each, and that no bar arises as to any of them until satisfaction is received, yet the party injured may have but one satisfaction. So, if as a matter of fact the wronged party has actually received satisfaction, or what in law is regarded as its equivalent, from one tort-feasor, he is barred from proceeding against the other tort-feasors. The rule as it exists in Maryland was thus stated for this court by Judge Pattison in *Cox v. Md. Elec. Rwys. Co.*, 126 Md. 300, at page 305:

320

"This court said in *Gunther v. Lee*, 45 Md. 60, *supra*, quoting from *Lovejoy v. Murray*, 3 Wall. 1: 'While the plaintiff has accepted satisfaction in full for the injury done him, from whatever sources it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages.' And in *Berkley v. Wilson* (87 Md. 219), *supra*, in which the court was discussing a plea similar to the one in this case, the court said, speaking through Judge Fowler: 'Whether the wrongdoer complained of in the former case be the joint act of Bunnecke and the defendants, or the several torts of each, can make no difference in determining the validity of the plea or the admissibility of the record as evidence in this case. If the defendant and Bunnecke had both been sued in the first case for the injury there alleged, there could, of course, have been but one recovery. And it would seem to be very clear upon reason and authorities as well, that the same result must follow when the same injury is caused by the independent acts of several wrongdoers. The reason of this rule is apparent. It is neither just nor lawful that there should be more than one satisfaction for the same injury, whether that injury be done by one or more. *Cleveland v. Bangor*, 87 Me. 264; *Brown v. Cambridge*, 3 Allen, 474; *Lovejoy v. Murray*, 3 Wall. 1; *Gunther v. Lee*, 45 Md. 67. In the case first cited, Whitehouse, J., speaking for the Supreme Judicial Court of Maine, said: 'No sound reason has been given, and it is believed none can be assigned, for such a distinction between the case of wrongdoers who are jointly and severally liable, and those who are only severally liable for the same injury. In either case the sufferer is entitled to but one compensation for the same injury, and full satisfaction from one will operate as a discharge of the others.' "

See also *Gunther v. Lee*, 45 Md. 60; *Berkley v. Wilson*, 87 Md. 219; *Bradford v. Harford Bank*, 148 Md. 1, 18; *Wash., B & A. Ry. Co. v. Cross*, 142 Md. 500, 513; *State v. Boyce*, 72 Md. 140, 142, 143.

This full satisfaction may assume the form either of a release, as in *Gunther v. Lee,* 45 Md. 60; of an entry of settlement upon the court docket in a pending action, as in *Cox v. Md. Elec. Rwys. Co.,* 126 Md. 300; of a payment or tender of the amount of a judgment previously recovered against one tort feasor, as in *Berkley v. Wilson,* 87 Md. 219; or of an accord and satisfaction, as in *Stockton v. Frey,* 4 Gill, 406, 412, 413, 417 (defendant's fifth prayer), 423; *Chetwood v. Nat. Bank,* 113 Cal. 414; *Dufresne v. Hutchinson,* 3 Taunton, 117, 128 Eng. Rep. 48; *Ruble v. Turner,* 2 Hen. & M. (Va.), 38; *Wallner v. Consol. Traction Co.,* 245 Ill. 148; *Seither v. Phila. Traction Co.,* 125 Pa. St. 397. While the full satisfaction may be made these various ways, every one has the effect and quality of its form, and, so, if the way be by release under seal, the rules applicable to specialties will prevail, but, if by parol, the rules pertaining to that form of agreement will govern. As pointed out by Judge Alvey in *Gunther v. Lee,* 45 Md. 60, 67, the effect of a seal is to import a consideration, and whether the evidence of a full satisfaction is a specialty or rests upon a parol agreement which is supported by consideration, the effect of the document or the parol testimony depends upon the intention of the parties as appears from their written or spoken words.

Here the agreement is unsealed, but rests upon a valid and valuable consideration, and the meaning of the written instrument is primarily for the construction of the court. The document recites the pendency of the separate suits of the plaintiff and her husband against the company for damages sustained by the injuries inflicted by the collision of the company's cab with the motor truck of Lanasa, who has been, or is about to be, proceeded against by the husband and wife to recover for the same damages resulting from the same injury. It further acknowledges the payment by the company to both the wife and the husband of $1,032.40, in consideration of which they agreed not only not to prosecute or cause to be tried their pending suits for the tort, but also never to begin any proceeding of any kind for loss or damage growing

out of the collision. Where a party agrees to abandon an action in tort brought, and never again to enforce by any kind of litigation whatsoever his right of action against the defendant, the legal effect is fully to discharge the promisee of all liability to the promisor, and to work an extinguishment of the promisor's right of action against the promisee. If suit were brought in violation of this agreement, it could be pleaded in bar. *Stockton v. Frey,* 4 Gill, 406; *Cox v. Md. Elec. Rwys. Co.,* 126 Md. 300; *Bainbridge v. Lax,* 9 Q. B. 819, 115 Eng. Rep. 1490; *Thurman v. Wilde,* 11 Ad. & El. 453, 113 Eng. Rep. 487; *Boosey v. Wood,* 3 H. & C. 484, 159 Eng. Rep. 620; *Seither v. Phila. Traction Co.,* 125 Pa. St. 395; *Addison on Torts* (8th Ed.), 118. The actions of the wife and her husband were to recover compensation for damages growing out of a single injury, although there was a plurality of tort-feasors. The amount of damages in each case was not apportionable among the wrongdoers, as the cause of action was indivisible, and the whole amount of damages was recoverable in these actions against the cab company. In addition, the damages sustained by the wife for alleged serious and permanent physical injuries, and for pain and suffering, and by the husband for the loss of *consortium* and his wife's services, are of an incalculable nature, and so the amount of the liability is not certain until ascertained and determined by a judicial finding.

Instead of awaiting the chance of verdicts in their favor and the assessment *in solido* of the amount of their damages, the wife and husband elected to take a certain amount for uncertain verdicts. By this election they are forever barred from a recovery of any further damages from the company. It follows that the payment made was not a partial but a complete discharge of the whole cause of action against the cab company. And since this cause of action is an entire and indivisible cause of action, its full satisfaction by one of the joint tort feasors is a complete satisfaction as to the other joint tort feasors. If the injured party choose to make a settlement in complete discharge of one wrongdoer's liability for an entire and indivisible tort, the intention imputed to

him by his act cannot be nullified by subordinate provisions in conflict with the primary purpose of his agreement. So, the introduction in the agreement of the subsidiary terms that the promises of the wife and husband to the company are not to affect their rights or claims to recover against the other tort-feasor the damages growing out of the same wrong, and that the agreement is not intended, and shall not be construed, as a release of either Lanasa or the cab company, will not work a revocation of the paramount intention of the parties. The court must construe an instrument according to its plain meaning and legal effect, and will not be diverted from this course by self-serving declarations of the interested parties that conflict with the object and clear meaning of the document. The provisos that the instrument in question is not a release and that the right to recover for the same injury against the other wrongdoer remains unimpaired are nugatory, because repugnant to the primary meaning and legal effect and operation of the instrument itself. *Gunther v. Lee,* 45 Md. 60, 67.

As the question is here presented, the trial court was in error in granting the motion of *ne recipiatur (Cox v. Md. Elec. Rwys. Co.,* 126 Md. 300), and in excluding the testimony offered in the bills of exception just reviewed. *Stockton v. Frey,* 4 Gill, 406, 412, 413, 423. The difficulty of this question and the conflicting views entertained are illustrated by a valuable and extensive annotation found in 50 *A. L. R.,* at pages 1057-1105. The wide difference of reasoning and of conclusion exhibited by the courts emphasize the wisdom of an adherence to the rule and principles established by our own decisions, which are logical, sound, and just, and do not invite collusive bargaining. See Code, art. 50, sec. 12A. The rule of this court is founded on the indissoluble unity of a cause of action against joint tort-feasors. No matter their number, the injury is entire and indivisible, and the injured party is entitled to but one compensation, whose amount is generally incalculable. *Murphy v. Penniman,* 105 Md. 452, 473. It is, therefore, difficult to see how a settlement in full

with one tort-feasor for an agreed compensation is not a discharge of the other.

The facts of the record in the pending appeal are clearly distinguishable from those of *Shriver v. Carlin & Fulton Co.,* 155 Md. 51, which did not involve any question affecting joint tort-feasors in a cause of action for an unascertained amount, but the liability to the judgment creditor of the remaining judgment debtors after the judgment creditor has had entered the judgment agreed and settled as to one designated judgment debtor only. *Shriver v. Carlin & Fulton Co., supra,* is in the end of a line of cases relating to the release of one of a number of joint debtors, that includes *Murphy v. Penniman,* 105 Md. 452, 472, 473; *State v. Gott,* 44 Md. 341; *Valley Bank v. Mercer,* 97 Md. 458; and *Commercial Bank v. McCormick,* 97 Md. 703.

3. The eighteenth bill of exceptions is to the overruling of defendant's special exception to the granting of the plaintiff's first, second, and third prayer, and to the sustaining of plaintiff's special exception to the granting of the defendant's fourth prayer and rejecting this prayer. No objection on brief or in argument was made to the plaintiff's second and third prayers, and no error is discovered. *Howard County v. Pindell,* 119 Md. 69; *Benesch v. Ferkler,* 153 Md. 680. The first prayer of the plaintiff, and the second prayer of the defendant, which was granted, are not in conflict, since they are addressed to the respective theories of the plaintiff and the defendant as to the relative positions of the cab and the truck, and the corresponding duty of each driver in that particular situation in which the jury might find the drivers and vehicles were before the collision. The two prayers are not conflicting but complemental. *Taxicab Co. v. Ottenritter,* 151 Md. 532; *Louis v. Johnson,* 146 Md. 115; *Friedman v. Hendler Creamery Co.,* 158 Md. 131.

As the record discloses legally sufficient evidence from which the jury could find that the driver of the cab did not reduce his speed to a reasonable and proper rate, and failed to have the cab under control as it approached the intersection of the streets, the plaintiff's special exception to the de-

fendant's fourth prayer should have been overruled, and, as the prayer was otherwise unobjectionable, it should have been granted. Code, art. 56, sec. 195.

4. The remaining exceptions are to the rulings on the evidence. The defendant sustained no injury on the rulings which make the first and second and seventeenth exceptions. The questions asked in the fourth and fifth exceptions were objectionable, as they called for the expression of an opinion upon a subject matter for the jury to determine from the testimony. And the evidence shown to have been excluded by the thirteenth and fourteenth exceptions was not material for the purpose offered.

The plaintiff had testified in chief so as to free the driver of the cab from blame, and to put the sole responsibility for the happening of the collision upon the driver of the truck. The beginning of her cross-examination was more categorically and emphatically to the same effect. The cross-examiner then inquired whether and why she had employed an attorney and had brought suit against the cab company in a large amount for injuries received in the collision, and whether she had informed her attorney that when the accident occurred the driver was driving his cab in a careless and negligent manner. The refusal of the court to permit this cross-examination form the third, sixth, seventh and eighth exceptions. In view of the plaintiff's testimony, this evidence was material and relevant. It reflected upon the witness' credibility and affected the weight of her testimony, since its purpose was to show a prior declaration, and court proceedings begun by the plaintiff and settled by her for a valuable consideration upon her explicit charge that the injury she had received in the collision were due to the negligence of the same driver of the cab, whom her testimony in the pending action completely exonerated from any fault. *Seither v. Phila. Traction Co.,* 125 Pa. St. 397.

For the errors indicated by this opinion, the judgment will be reversed.

*Judgment reversed, with costs, and new trial awarded.*

Offutt, J., filed the following dissenting opinion:

It is with reluctance and some hesitation that I feel constrained to dissent from the very able opinion adopted by a majority of the court in this case. But in view of the fact that the same judges who adopted that opinion, in *Shriver v. Carlin & Fulton Co.*, 155 Md. 51, reached a diametrically opposite conclusion, a due regard for equality and uniformity in the administration of the law constrains the dissent. The reasons for it are these:

In this case the plaintiff claims to have been injured, while a passenger in a motor vehicle operated by the Yellow Cab Company, as the result of a collision between that vehicle and a truck owned by Vincent Lanasa, which collision, she alleged, was caused by the joint negligence of the cab company and Lanasa. To recover for her injuries, she instituted separate suits against Lanasa and the cab company. Pending the suit against Lanasa, she accepted from the cab company $1,032.40, and in consideration thereof executed an agreement containing a covenant not to sue the cab company, in which the plaintiff stipulated that "the parties hereto agree that this covenant not to sue, so given by the parties of the first part to the party of the second part, shall in no way affect the rights or claims of the parties of the first part to recover damages against the said Vincent Lanasa resulting unto them by virtue of said collision, and that this paper is not intended nor is it to be construed as a release of the said Vincent Lanasa or the Yellow Cab Company, a body corporate, party hereto of the second part." In *Shriver v. Carlin & Fulton Co., supra,* the plaintiff entered a judgment against joint defendants, "Agreed and settled" as to one defendant, White, "only." In that case that order was held to be a covenant not to sue, and not a release, and on that ground alone it was held that Shriver was entitled to execute the judgment to the extent of the unsatisfied portion thereof against White's codefendants. The only distinction between that case and this is that there the judgment was against an obligor and sureties on a bond, while here the claim was

against joint tort-feasors. But that is a distinction without a difference. In this case the claim itself was joint and several, in that it was joint. In that case the liability was fixed by a single judgment, in this it could have been fixed by either of several judgments against each tort-feasor. The reason why a release of one joint tort-feasor would operate as a complete satisfaction of the tort applied with equal force to the release of one joint judgment debtor, and if White's codefendants were properly held in that case, Lanasa was improperly discharged in this.

In accepting the payment and executing the agreement not to sue in this case, the plaintiff was entitled to rely on what this court had unanimously said in a case so recent as *Shriver v. Carlin & Fulton Co.*, for assurance that she was not barring herself from holding Lanasa to the full measure of his liability. Nor could Lanasa possibly have been injured. He was at law liable to fully compensate the plaintiff for any injury occasioned by his tort, and if she had received partial satisfaction therefor, he would have been entitled to have that deducted from any judgment against him recovered for the same injuries.

And the whole weight of modern authority supports that conclusion. There is no possible reason why Lanasa, who was found guilty of negligence by the jury, should be permitted to go scatheless, while the plaintiff is deprived of compensation to which under the law she was entitled, because she accepted a fraction of that compensation from the Yellow Cab Company which had joined with Lanasa in the tort. It was to prevent such a manifest injustice that the courts both of this country and in England have recognized that distinction, ignored by the opinion in this case, between a covenant not to sue and a release. That distinction is thus stated in 38 *Cyc.* 537: "Both a release of, and a covenant not to sue, a single wrong doer will operate as a bar so far as he is concerned. But where given to one or more of several joint tort-feasors the effect of a release is different from that of a covenant. The former will operate as a discharge not only

of the wrong-doer or wrong-doers to whom it is given, but of all the others, unless, as held by some of the courts, a cause of action against them is expressly reserved; but a covenant not to sue will affect only the right to redress against the party to whom it is given. In such case the covenant does not operate as a release of either the covenantee or the other tort-feasors, but the former must resort to his suit for breach of the covenant, and the latter cannot invoke the covenant as a bar to the action against them." And to the same effect is Cooley in his work on *Torts* (3rd Ed.), p. 237, where it is said: "But an acceptance of money or other consideration from one joint tort-feasor is not a discharge of the others, where there is no satisfaction or release. Nor is a mere agreement not to sue, though given for valuable consideration. In an Illinois case, where such an agreement was made with one defendant and the suit was dismissed as to him, the court says: 'A release to one of several joint tort-feasors is a release to all, and an accord and satisfaction with one of them is a bar to an action against the others. Here, there is no claim of a technical release under seal. The pending suit against Le Cardi was dismissed, and a written agreement was signed that no action should be begun against Le Cardi by appellee. This, on its face, was simply an agreement or covenant not to sue. The legal effect of such a covenant is not the same as that or a release. A covenant not to sue a sole tort-feasor is, to avoid circuity of action, considered in law a discharge, and a bar to an action against such tort-feasor. But the rule is otherwise where there are two or more tort-feasors, and the covenant is with one of them not to sue him. In such case the covenant does not operate as a release of either the covenantee or the other tort-feasors, but the former must resort to his suit for breach of the covenant, and the latter cannot invoke the covenant as a bar to the action against them.' " Nor is the weight of these statements lessened by the vague *dictum* in *Clopper v. Union Bank,* 7 H. & J. 103, decided over a century ago, that an indefinite covenant not to sue is tantamount to a release. The court in

that case was dealing with a sole covenant, and if its comment was intended to apply to such a case, it is wholly consistent with the present law, and its comment should fairly be construed as limited by the subject to which they were applied.

Judge Urner has authorized me to say that he concurs in these views.