ALFRED ELLING ET AL. *v.* HANSEL TRAVERS ET AL.
[No. 22, April Term, 1932.]

598

*Decided June 3rd, 1932.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Walter C. Mylander,* with whom were *Nathan Patz* and *Arthur E. Hamm* on the brief, for the appellants.

*George E. Kieffner* and *S. Wilmer Pleasants,* with whom were *Stewart, Pearre & Kieffner* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Anna Elling, one of the appellants, was, on October 31st, 1930, injured as the result of a collision at the intersection of Franklin and Cathedral Streets in the City of Baltimore between a taxicab owned by the Yellow Taxicab Company, in which she and her husband were passengers, and an automobile owned by one Hansel Travers and operated by George Travers. Shortly after the accident, she and her husband Alfred Elling, the other appellant, employed Arthur E. Hamm, Jr., an attorney at law, to enforce their claims for damages, for the very severe injuries which Mrs. Elling had suffered, against such persons as might be liable therefor. At the time of the accident, Hansel Travers was insured by the New Amsterdam Casualty Company against liability for damages caused by the operation of his automobile, and, shortly after the appellants had employed Hamm, he was approached by Henry Mitnick, claim agent for the insurance company and also an attorney at law, and as a result of negotiations between them the Ellings executed a covenant not to sue the Traverses and received from the insurance company one hundred dollars therefor.

Subsequently, the Ellings docketed suit in the Court of Common Pleas of Baltimore City against the Yellow Taxicab Company, the wife to recover for her own loss and injury and the husband for the loss of her services. To those actions the defendant pleaded in each case the general issue and a special plea setting up the alleged settlement with Hansel and George Travers and the New Amsterdam Insurance Company as a bar. Demurrers to those special pleas were overruled, and the appellants then filed their bill of complaint in the Circuit Court No. 2 of Baltimore City, in which, as amended, they prayed that their agreement or covenant not to sue be set aside on the ground that its execution was either induced by fraud or by an innocent though erroneous statement by counsel for the insurance company of its legal meaning and effect. A demurrer to that amended bill of complaint was sustained and the bill dismissed. This appeal is from that decree.

In addition to the facts referred to above, the bill states others which for brevity will be given in narrative form.

Both Mitnick and Hamm are practicing lawyers, and both apparently held themselves out to their respective clients as qualified to represent in that capacity persons interested in casualty litigation, and, whatever may be said of laymen, they at least should be presumed to have known the law with which they undertook to deal.

Under those circumstances Mitnick "proposed" to Hamm that, "inasmuch" as the collision was occasioned by the negligence of the Yellow Taxicab Company, "and there was no fault on the part of the said Hansel or George Travers," Hamm's clients, the appellants in this case, execute and deliver to the Traverses an agreement not to sue them or make any demand on them for the injuries or losses they had sustained as a result of the collision. The agreement thus proposed was in effect a covenant not to sue and was so designated. In reply to that "proposal," Hamm asked Mitnick what effect such an agreement would have on the right of the Ellings to recover against the taxicab company, and Mitnick answered that it would have no effect upon said rights, but that their claims could be prosecuted against it as though the agreement had never been made, and added that he knew that as a fact from his experience in many similar cases. Hamm then said to Mitnick that, if the execution of the agreement would not affect his clients' rights against the taxicab company, he would advise them to execute it, for in his opinion the cab company was at fault in the case. Thereupon

> "the said Mitnick again reiterating his said statements and representations in substance as hereinbefore alleged, offered to pay the small or nominal sum of one hundred dollars ($100.00) to your orators for said agreement, which said sum your orators' attorney, relying upon the truth and correctness of said statements and representations hereinbefore alleged to have been made to him by said Mitnick, and upon which statements and representations he was induced to rely by

the said Mitnick, who well knew that your orators' attorney did rely upon the truth thereof, accepted as a nominal consideration for said agreement or 'covenant not to sue,' it being understood by the said Mitnick and your orators' attorney that your orators' rights against the said cab company would in no manner be affected and that inasmuch as the said cab company was at fault it should be required to compensate your orators in damages for the injuries and losses they suffered and sustained as a result of the said collision.

"That the said Mitnick prepared, or had prepared, said agreement or 'covenant not to sue' the said Travers, brought the same to the offices of your orators' attorney, who relying upon the truth of said statements and representations made to him by the said Mitnick, and placing faith and confidence in him, obtained the execution of said agreements by your orators in duplicate on or about November 22nd, 1930, and shortly thereafter delivered said agreement in duplicate at the offices of the New Amsterdam Casualty Company in the City of Baltimore, and obtained a check of said Company in the sum of One Hundred Dollars ($100.00)."

The Ellings were unable to effect a settlement with the cab company, and on December 2nd, 1930, severally brought suits against it as stated above. In each of those cases an amended special plea was filed, which were so much alike that the plea in the wife's case may, for the purposes of this case, be treated as identical with the plea in the husband's case. That plea was in the following form: "That prior to the institution of this suit, to wit, on or about November 10th, 1930, this plaintiff, and her husband, made claim against the above named defendant, and also Hansel Travers for the same tort as the result of injuries sustained by the plaintiff, as a result of a collision between a taxicab of the above-named defendant and an automobile belonging to the said Hansel Travers (the claim of the husband being for loss of services, etc.) ; that thereafter, to wit, on November 22nd, 1930, this

plaintiff and her husband settled their claims against the said Hansel Travers for the sum of one hundred dollars, which said sum was paid to them on November 26th, 1930; then subsequently thereto, to wit, December 2nd, 1930, this plaintiff filed the above cause of action to recover damages for the same tort which this plaintiff and her husband had, as hereinbefore recited, accepted the sum of one hundred dollars in settlement thereof from the said Hansel Travers; that the aforesaid settlement of the plaintiff's claim with the said Hansel Travers constitutes a bar to her recovery in this case."

After alleging that demurrers to those pleas were overruled, the appellants conclude their bill by stating that:

"Your orators, or their said attorney, did not intend by their said agreement to release or exonerate the said cab company from liability to them for damages growing out of said collision, and the said Mitnick has subsequently stated to your orators' attorney that he did not intend to effect the release or exoneration of said cab company in obtaining said agreement, and that he did not know that said agreement would bring about that result.

"That is if the said Mitnick did not intend to effect the release or exoneration of said cab company, then his said representations were falsely and deceitfully made to your orators' attorney and the obtaining of said agreement from your orators is a gross and palpable fraud.

"That your oratrix, Anna Elling, is the mother of several children; that as a result of said collision, she was most seriously injured, she having sustained a broken neck, which has totally incapacitated her ever since the happening of said collision and which injury is permanent, necessitating the wearing of a steel brace to hold her head in place, and causing her to suffer great and excruciating pain and mental anguish and to live in constant fear and apprehension of death.

"That the sum of one hundred dollars ($100.00) does not adequately compensate your orators for the

damages they have sustained, but on.the contrary is a mere pitance compared to what they are entitled to receive as reasonable indemnity for the wrong suffered by them, and that unless said agreement is annulled and rescinded they will be greatly damaged and injured.

"That your orators have heretofore, through their said attorney, and since the discovery of the falsity of said statements and representations, offered to return said sum of one hundred dollars ($100.00) to the New Amsterdam Casualty Company and have demanded of said company that said agreement or 'covenant not to sue' be annulled, and the interested parties restored to their respective rights existing prior to the execution and delivery of said agreement or 'covenant not to sue'; but the said casualty company has refused the return of said sum of one hundred dollars ($100.00) and refused to annul said agreement.

"That your orators tender unto the said defendants in this honorable court the sum of one hundred dollars ($100.00) in cash herewith, which said sum represents the amount paid by the said casualty company to them as aforesaid."

The bill does not state whether the suits in the Court of Common Pleas have been terminated or are still pending, whether the accident in which Mrs. Elling was injured was occasioned by the negligence of the Traverses or of the taxicab company, or of all of them, it does not state the language, terms and contents of the agreement which it seeks to destroy, no copy of that agreement is filed with the bill, nor any explanation given for that omission. A good bill of complaint should state fully, candidly, and frankly every material fact affecting the complainant's right to the relief prayed (*Miller's-Equity Proc.*, sec. 92); it should state facts as such, and not mere conclusions from facts which it fails to disclose (*Lamm v. Burrell*, 69 Md. 274, 14 A. 682; *Fletcher's Eq. Pl. & Pr.*, sec. 72); and it should enable the court to determine from an inspection of it, without resort-

ing to conjecture or specification, whether the complainant would be entitled to the relief prayed if its allegations are true. The bill in this case as drawn fails to meet those requirements, and states no facts sufficient to entitle the complainant to relief in equity.

Appellants' contention in this court is that as a result of misrepresentations which they argue were material, they were wrongfully induced to execute an instrument and consummate a transaction which they later discovered deprived them of valuable legal rights which they had been led by such misrepresentations to believe would not be affected by it.

The mistake of which they complain is not as to the nature of the agreement which they executed, for it appears from the bill that they did understand that fully, but as to its legal effect, and the misrepresentations, upon which they base their claim to relief, were that that instrument deprived them of the right to prosecute a claim against the Yellow Taxicab Company for the injuries they sustained, but they fail to show that it would have any such effect. Before they can be injured by being deprived of a right, the right must exist. It could only exist if the accident which resulted in the injuries to Mrs. Elling was occasioned by some wrongful act of negligence of that company, but they allege no such act or negligence. It is indeed stated that Mr. Mitnick said to Mr. Hamm that the accident was not the fault of the Traverses, and that Mr. Hamm said to Mr. Mitnick that he was of the opinion that the cab company was at fault in the case. But the mere repetition of such conversations could not take the place of a simple and direct statement that the injuries suffered by Mrs. Elling were occasioned by fault or negligence of the taxicab company. They could not possibly be evidence in any case where the liability of that company for such injuries is in issue, for, as to it, they prove nothing, and they mean nothing.

And, while appellants say in their bill that they were mistaken in the legal effect of the instrument they executed, it does not appear from such facts as they allege that they were mistaken, or that the representation that it would not de-

prive them of the right to prosecute their claim against the cab company was false. The paper itself is not before us, and we cannot therefore construe it, but, if it has the effect which the appellants say it has, it operates as a covenant on their part not to sue the Traverses for their injuries arising out of the collision. The effect of such an agreement would be to release the taxicab company also, in the event, and only in the event, that some tortious act on the part of the Traverses contributed to the accident in which Mrs. Elling was injured. If it did so contribute, then, under the case of *Lanasa v. Boggs,* 159 Md. 311, 151 A. 21, the covenant not to sue the Traverses releases it. If it did not so contribute, and the accident was occasioned solely by the tort of the taxicab company, it had no such effect, for the doctrine that the release of one joint tortfeasor releases all has no application unless there is a joint tort. If, therefore, Mitnick was right when he said that the Traverses were not in fault, and Hamm was right when he was of the opinion that the taxicab company was in fault, the statement that the agreement would not affect complainants' rights against the cab company was true. Yet there is not a word in the bill from which it can be inferred that the accident was caused by the joint tort of the Traverses and the taxicab company, but, on the contrary, such inferences as it permits are that it was caused by the fault of the taxicab company. The plea filed by the taxicab company to the suits against it recites that, prior to the institution of the suits, the complainants "made claim against" it and Hansel Travers for the "same tort," and that that claim was settled against Travers for one hundred dollars. If that were true, and the settlement was for the same tort, it would, under *Lanasa v. Beggs, supra,* have released the taxicab company, but, as stated, the only inference that the bill permits is that it is not true, but that the payment made by the Traverses was not to satisfy a claim for injuries caused by their tort.

The case was argued in this court upon the theory that the appellants were induced to execute an instrument surrendering valuable rights and privileges by false and material

representations as to its legal import and effect, made under such circumstances as entitled them to rely upon the truth of such representations. But the bill and the argument in this court are two quite different things, which have little apparent relation to each other. Much is said in the bill of the effect which Mitnick's statement of the law had upon Hamm, attorney for the appellants, but nothing is said of the effect of Hamm's statements or Mitnick's statements upon the appellants. From the uncertain and groping averments of the bill, several conjectural inferences may be drawn, no one of which is stated with the certainty required by equity pleading. It may be conjectured that the agreement was executed as the result of collusion, for on its face it seems improbable that a woman, who had been so badly injured that she may be compelled to wear for the rest of her life a steel brace to hold her head in place, would accept one hundred dollars in full compensation for her injuries, and it could have been inferred, too, that two practicing lawyers would not have ignored a legal principle which had been so recently restated, when they could have informed themselves of the state of the law by reference to sources readily and easily available to the profession. It might be inferred, also, that Hamm, although negligent in failing to inform himself of the law, nevertheless, in good faith, felt that he could rely upon Mitnick's statement as to what it was, because the nature of his (Mitnick's) employment was such as to make him familiar with the law of torts. Or, it might be possibly inferred that neither Mitnick nor Hamm knew what the law was, and that both acted in good faith in the mistaken belief that the covenant not to sue the Traverses did not affect appellants' claims against the taxicab company.

If appellants rely upon a fraudulent and collusive conspiracy between their attorney and the attorney for the insurance company, equity could afford relief (*Balto. Sugar Refining Co. v. Campbell & Zell,* 83 Md. 55, 34 A. 369); if they executed the agreement with full knowledge of its nature and purpose, but in ignorance of its legal import and effect, equity can afford them no relief in the absence of

fraud or inequitable conduct on the part of the other party to the contract. *Euler v. Schroeder,* 112 Md. 155, 76 A. 164. But, if the appellants executed the agreement in the mistaken, but honest, belief that its execution did not affect their remedy against the cab company, and but for such belief they would not have executed it, and the insurance company knew that to be so, and with that knowledge induced the execution of the agreement and, against the appellants' protest, retained its benefits, the acts of the insurance company might well constitute such inequitable conduct as, added to the mistake of law, would justify a court of equity in setting it aside. For, as stated in *Pomeroy, Equity Jur.,* vol. 2, sec. 847: "Whatever be the effect of a mistake pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, procured, aided, or accompanied by inequitable conduct of the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconception of the law was the result of, or even aided or accompanied by, incorrect or misleading statements, or acts of the other party. When the mistake of law is pure and simple, the balance held by justice hangs even; but when the error is accompanied by any inequitable conduct of the other party, it inclines in favor of the one who is mistaken. The scope and limitations of this doctrine may be summed up in the proposition that a misapprehension of the law by one party, of which the others are aware at the time of entering into the transaction, but which they do not rectify, is a sufficient ground for equitable relief. A court of equity will not permit one party to take advantage and enjoy the benefit of an ignorance or mistake of law by the other, which he knew of and did not correct."

But the bill alleges no facts sufficient to support any one of these theories, and, since neither rights nor remedies exist

apart from facts, as the complainants, with full knowledge of what the facts of their case were, failed to state them, the court was without power to supply the omission, and the demurrer to the bill was properly sustained.

The further objections that the complainants have an adequate remedy at law, and that the Yellow Taxicab Company should have been a party, are without substantial merit.

The appellants executed the agreement in the belief that no fault on the part of the Traverses contributed to the injuries of which they complain, and there is nothing in the bill to indicate that they believe differently now. Whether the accident was caused by the fault of the Traverses or of the Yellow Taxicab Company, or both or either, cannot be determined until the juries in the law cases have passed upon those issues. If they should decide that it was caused by the concurrent or joint negligence of both, then the agreement would release the cab company; if they determined that it was caused solely by the negligence of the cab company, the agreement might have no such effect, depending upon facts not before us. But it is apparent that, even if permissible, the confusion incident to trying the validity of the covenant not to sue in the tort cases against the cab company would so embarrass appellants that, even if they have that right, it would not afford them a full, adequate and complete remedy at law.

Nor is there any conceivable reason for joining the Yellow Taxicab Company in the equity suit. It was not a party to the agreement, paid no part of the consideration paid under it, no relief against it could be granted in such a case, and, if in fact the agreement is held to be void, it cannot complain, since it merely loses the right to assert a defense which in truth never existed, and it has no right to protest against the correction of either a fraud or mistake by the parties who actually made the agreement.

It has been suggested that, conceding that the bill is insufficient, it be remanded for amendment. But upon the facts alleged in it, and in view of the further fact that one amendment was permitted, we find no abuse of discretion in the

action of the chancellor in dismissing the bill, since, in the interest of simplicity and clarity, it is better to require the complainants to begin anew. *Miller's Equity Proc.*, sec. 186; *Bannon v. Comegys,* 69 Md. 422, 16 A. 129. The decree appealed from will therefore be affirmed, with costs.

*Decree affirmed, with costs.*