EMILY CARROLL ET AL. *v.* MARGARET KERRIGEN
[No. 1, January Term, 1938.]

*Decided February 2nd, 1938.*

The cause was argued before URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter M. Jenifer* and *Thomas M. Jenifer*, for the appellants.

*J. Howard Murray* and *John R. Elly*, with whom was *John Y. Offutt* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Margaret J. Kerrigen, the appellee, on June 21st, 1931, while upon the premises of Douglas Gordon Carroll, Sr., as a domestic, suffered severe personal injuries from burns, as a result of the ignition of certain gasoline upon the terrace in front of the Carroll dwelling, to recover damages for which she instituted suit against Mr. Carroll, his wife, Emily, and their infant son, Douglas Gordon Carroll, Jr., in the Circuit Court for Baltimore County. That proceeding did not reach the trial stage, the lower court having in effect held the declaration demurrable as to Douglas G. Carroll, Sr., and, as the plaintiff declined to amend her declaration, a judgment

was entered in Mr. Carroll's favor for costs. Upon appeal to this court that judgment was affirmed in an opinion by Judge Urner, *Kerrigen v. Carroll,* reported in 168 Md. 682, 179 A. 53.

She subsequently filed three successive amended declarations against Mrs. Emily Carroll and Douglas Gordon Carroll, Jr., demurrers to the first two of which were sustained, but the third having been held good on demurrer, the cause proceeeded to trial, which resulted in a judgment in her favor. Upon this appeal therefrom, nineteen exceptions are presented for review. The first of these relates to the trial court's action in overruling the demurrer to the third amended declaration, the second to the sustaining of a demurrer interposed by appellee (plaintiff below) to appellants' plea of release, while the remainder pertain to rulings upon the prayers. In our consideration of the case, the exceptions will be discussed in the order above named.

The declaration contains two counts, in the first of which it is alleged that, for some time prior to the commission of the wrongs therein mentioned, the plaintiff was an employee in the home of Douglas Gordon Carroll, Sr., and his wife, and was required to take orders from Mrs. Carroll; that on June 21st, 1931, while pursuing her customary duties, she was directed by Mrs. Carroll to bring to her upon the lawn a certain container of gasoline, and at the time of its delivery the latter knew that plaintiff was being ordered from a place of safety upon ground which Mrs. Carroll and her son were to make dangerous by their subsequent acts, but this was unknown to the plaintiff; that after delivering the container of gasoline, Mrs. Carroll, without any warning to the plaintiff as to the use she intended to make of it, "immediately threw and strewed the same about the lawn in close proximity" to her, and, before she could reach a place of safety, Douglas Gordon Carroll, Jr., infant son of Emily Carroll, who was present and aiding his mother about the lawn and acting under her orders, ignited the gasoline which had been thus thrown upon

the lawn by the mother, and caused it to burn and explode, in consequence of which plaintiff's clothing caught fire, and she was severely burned about the body and limbs, and suffered severe, painful, and permanent injuries without any negligence on her part contributing thereto.

The second count is in effect similar to the first and charges that, on the date in question, while the plaintiff in her capacity as a domestic servant was pursuing her duties in connection with her employment, she was directed by Mrs. Carroll to deliver to her upon the lawn a container of gasoline, and did make such delivery; that thereupon Mrs. Carroll threw the gasoline on the lawn near the plaintiff, and the son, acting under his mother's directions, before the plaintiff had reached a place of safety, set fire to it; that neither of the defendants gave any notice or warning to the plaintiff of their intention to set fire to the gasoline, although they and each of them knew that gasoline, when ignited, would imperil her life and person.

Appellants insist that the demurrer to this declaration should have been sustained, because of a misjoinder of actions, asserting that the first count alleges a breach of duty arising under a contract between plaintiff and Mrs. Carroll, while the second count is in tort against Mrs. Carroll and her infant son, and that there is also for the same reason a misjoinder of parties in these counts. This court does not so interpret them. Plaintiff's employment referred to in each count can in no way make the cause of action arise *ex contractu*, in view of the other allegations, and, in our judgment, its sole effect is unimportant, except for the showing that she was rightfully upon the premises, because of which the defendants owed her a greater duty than was due a trespasser or a mere licensee. Moreover, we feel that both of these counts are in tort, and that their allegations definitely and sufficiently allege conduct on the part of each of the defendants of such character as to charge them with negligence causing her injuries, for, as stated by this court, speaking through Judge Parke, in *Lanasa*

*v. Beggs,* 159 Md. 311, at page 319, 151 A. 21, 25: "Where several persons unite in an act which constitutes a wrong to another, each must assume and bear the responsibility for the misconduct of all, and the party injured may pursue all in one action or any one of them severally, or any number less than the whole without regard to the participation of the others." See also volume 1, *Cooley on Torts* (4th Ed.) secs. 64, 66, and 75; 46 *C. J.*, secs. 169, 170, pp. 1329 to 1332, inclusive. The court's action in overruling the demurrer to the declaration was, therefore, correct.

In the second plea of the defendants it was alleged that, after the claim had accrued and prior to the suit, the plaintiff had by deed released them therefrom. In compliance with a demand for a bill of particulars under this plea, they alleged that, prior to the institution of the suit, on September 15th, 1933, plaintiff made claim against the defendants and also against Douglas Gordon Carroll, Sr., her employer; that, after the claim was made against the said Carroll, Sr., his wife, and son, the plaintiff, for a valuable consideration, released and discharged Douglas Gordon Carroll, Sr., from any claim or demand whatever "for the same tort under which she now seeks to hold the defendants." The release to Carroll, Sr., is then incorporated and purports to release him from any "consequence of burns" received by the plaintiff on June 21st, 1931, the consideration mentioned therein being $16.67. To this plea, the plaintiff interposed a demurrer, which was sustained by the court, and this action occasioned the second exception. Appellants assert that, since the plaintiff could have but one satisfaction for her injuries and did by her release receive settlement from Douglas Gordon Carroll, Sr., this defense is available to them and the court erred in sustaining the demurrer to the plea, while appellee contends that the release is entirely unavailing to these appellants, because the release of one not in fact liable is no protection whatsoever to those who are liable; that in the present case the pleadings in no way allege any participation by

Douglas Gordon Carroll, Sr., in the acts of negligence which resulted in her injury. Upon this subject, the authorities are in direct conflict. 23 *R. C. L., Release,* sec. 35; 53 *C. J., Release,* sec. 78, p. 1260; annotation, *Tort-Feasors,* 50 *A. L. R.* p. 1093; annotation 66 *A. L. R.* p. 213.

In treating the subject in *R. C. L., supra,* the author states: "The question of whether a release to, or a satisfaction from, a person not shown to be liable as a joint wrongdoer comes within the rule that a discharge of one joint wrongdoer is the discharge of the others is attended with no little difficulty, on principle, and the authorities are more or less conflicting. Many cases hold that the rule applies only where the money is paid by, or the release executed to, one who is himself actually guilty of the wrong. In other words, a release to or a settlement with one not in fact liable to the releasor or not shown to be a joint tort-feasor in, although perhaps connected with, the wrong committed, does not destroy the right of action against those who otherwise are liable. This would not appear to be unreasonable, and it seems to be supported by the weight of authority. And the conflicting decisions may, perhaps, be harmonized by reference to the distinction, now so widely recognized, between the effect of a release for a consideration not intended as compensation, and the effect of the receipt of a sum of money regarded as compensatory damages."

However, in view of the decision of this court in *Elling v. Travers,* 162 Md. 597, 160 A. 789, the question can no longer be regarded as an open one in Maryland. In that case the plaintiff had sustained injuries because of a collision between a taxicab in which she was a passenger and an automobile owned by Travers. After the accident, she and her husband secured counsel to enforce their claims for damages against those who might be liable therefor. The attorney thus employed was approached by an agent for the company carrying the insurance for Travers against liability for damages caused by the operation of his automobile, and Elling

and wife executed a covenant not to sue the insured. Later they brought suit against the taxicab company to recover for their injuries, and the defendant by special pleas set up the settlement with Travers and his insurer as a bar to action. Demurrers having been overruled to those special pleas, the appellants then filed suit in equity, asking that their agreement or covenant not to sue be set aside, because its execution was induced by fraud or by an erroneous, if innocent, statement by counsel for the insurance company as to its legal meaning and effect. A demurrer to the bill of complaint was sustained and the bill dismissed. On appeal to this court, Judge Offutt, in the course of the opinion, said, 162 Md. 597, at page 605, 160 A. 789, 791: "The effect of such an agreement would be to release the taxicab company also in the event, and only in the event, that some tortious act on the part of the Traverses contributed to the accident in which Mrs. Elling was injured. If it did so contribute, then, under the case of *Lanasa v. Beggs,* 159 Md. 311, 151 A. 21, the covenant not to sue the Traverses releases it. If it did not so contribute, and the accident was occasioned solely by the tort of the taxicab company, it had no such effect, for the doctrine that the release of one joint tortfeasor releases all has no application unless there is a joint tort."

It follows that the court's action in sustaining the demurrer to the appellants' second plea was free from error.

This brings us to a consideration of the prayers. At the close of the plaintiff's case, appellants offered seven prayers, numbered A, B, C, D, E, F, and G. The first of these challenged the legal sufficiency of the plaintiff's evidence and sought a directed verdict for both defendants. Prayer D sought an instruction for Mrs. Carroll that the plaintiff had offered no evidence legally sufficient to establish primary negligence against her under the first count of the declaration, and their E prayer was similar, except that it was made applicable to Douglas Gordon Carroll, Jr. Prayer F was similar ex-

cept that it applied only to the right to recover against Mrs. Carroll under the second count, while their G prayer sought an instructed verdict for Douglas Gordon Carroll, Jr., under the second count of the declaration, because the plaintiff had offered no evidence of primary negligence on his part legally sufficient to entitle her to recover. Their H prayer sought an instructed verdict for both defendants upon the ground that it appeared from the uncontradicted evidence in the case that the plaintiff was guilty of negligence directly contributing to her own injury. To the court's action in refusing these eight instructions, exceptions 3 to 10, inclusive, were taken, but since the appellants thereafter proceeded with their defense, it must be held that they thereby waived their right to have those rulings reviewed. 2 *Poe, Pl. & Pr.,* sec. 295B, and cases there cited.

At the close of the entire case, appellants reoffered their demurrer prayers B, C, D, E, F, and G above referred to, by each of which they sought an instructed verdict for one or both of defendants under one or both counts of the declaration, basing them upon the legal insufficiency of the evidence offered by the plaintiff. Their refusal by the trial court occasioned exceptions 12 to 17, inclusive. That these instructions were too narrow cannot be doubted, for as stated in 2 *Poe, Pl. & Pr.,* sec. 295B: "A prayer that there is no evidence legally sufficient to entitle the plaintiff to recover may be offered at the end of the plaintiff's case, or at the end of the whole evidence. If offered at the end of the plaintiff's case, and granted, it, of course, brings the trial to an end with a verdict in favor of the defendant. If rejected, the defendant is not thereby precluded from going on with the trial, but by force of a statute, making uniform the practice throughout the state, is entitled to introduce his defense. If offered at the end of the whole testimony, it must be made broad enough to include the testimony introduced on behalf of the defendant as well as of the plaintiff; for it sometimes happens that the evidence on the part of the defendant supplies a material defect in

the case, as proved on the part of the plaintiff, and if, after the rejection of such a prayer at the end of the plaintiff's case, the defendant proceeds to offer evidence in defense, he will be held to have waived his exception to such rejection." See, also, *United Rys. & Electric Co. v. State, use of Lapka,* 163 Md. 313, 163 A. 90; *Quimby v. Greenhawk,* 166 Md. 335, 171 A. 59, and cases there cited. Since, therefore, the demurrer prayers did not go to the whole testimony in the case, but were confined solely to that offered on behalf of the plaintiff, it must be held upon these authorities that their refusal was proper.

There remain for consideration exceptions 11, 18, and 19. The first of these was reserved by reason of the court's refusal of appellants' A prayer, which was a general demurrer to the evidence, the second to the refusal of their H prayer, by which they sought an instructed verdict because of the plaintiff's contributory negligence, while the nineteenth and final exception concerns the refusal of their fourth prayer, which submitted the case to the jury on their theory of contributory negligence on the part of the plaintiff. At the time of its refusal the court granted an instruction of its own upon contributory negligence, but to this action no exception was reserved.

The testimony of the plaintiff was in effect that on the date of her injuries she was employed in the home of Douglas Gordon Carroll, Sr., where she had previously worked for seventeen years. She was requested by Mrs. Carroll to take the latter a bottle of turpentine. This she did, without going outside the house. Later Mrs. Carroll asked her to bring a quantity of gasoline, saying she wanted to kill some ants. The witness delivered the gasoline to Mrs. Carroll, who at that time was upon the stone terrace in front of the dwelling, and was being assisted by her son in destroying the ants; that, when the plaintiff handed her the container of gasoline, she asked her son to help her get rid of the ants, stating she was going to burn them, and at once she threw the gasoline upon

the ground near the position occupied by plaintiff, causing some of it to spatter upon her clothing. Under her directions, the son lighted a match and, before the plaintiff, who was returning to the house, reached a place of safety, he threw it to the ground and upon the flagstone terrace, igniting the gasoline previously placed there, and immediately an explosion occurred almost beneath plaintiff's feet, the flames at once spread to her dress and burned her severely. Just before the match was struck, plaintiff was about eight feet from Douglas Gordon Carroll, Jr., and somewhat nearer his mother. Her injuries were severe end necessitated her confinement in a hospital for a considerable time, and she was treated by physicians from the date of her injuries to December 6th, 1931, within which period she underwent two skin grafting operations. Her wounds had for the most part healed, but there was a loss of motion of the left ankle and weakness in the left hand. Upon cross-examination she denied knowing the turpentine had previously been set on fire when she delivered the gasoline, but admitted that, had she remained where she was at the time of its delivery, she would not have been burned. However, she stated that she assumed the lighted match would not be thrown until she had passed over the area saturated with gasoline. Her cross-examination by appellants' counsel was most searching and covers more than fifteen pages of the record, and counsel urge that the testimony is entirely too vague, indefinite, and inconclusive to enable the jury to form any rational opinion upon it as to the existence of any negligent conduct upon the part of the defendants. It is true that, with reference to certain matters, more of detail than of substance, plaintiff did, during her cross-examination, exhibit some confusion, but it must be remembered that this testimony was given almost six years after the accident, and apart from this there is as to some matters no conflict between her statement and the statements of the appellants. Mrs. Carroll and her son testified that they first tried to destroy the ants by igniting the turpentine placed on the flagstone

terrace; that it did not burn very well and this prompted her to call for gasoline. Mrs. Carroll states that, at the time it was received, the lighted turpentine was still burning under the boxwood; that she said to her son "don't you light it, let me do it." She then set the gasoline container down, and the son poured "a little" for her to light, and in some way the bucket containing the remainder either upset or the flames came to it. Continuing she stated: "Anyway, it went off and it was lit. We were standing right here (indicating) ; Margaret, the maid, comes right up here; Mr. Carroll, in the meantime, told her to keep away. He said, 'Go away; go away; you will get burned.' She goes up here and gets right into the flame, because the flame has gone into the box bush and set fire to the box bush. Then, of course, she gets very excited, which anybody would get excited, and turns around and runs down here, where there is a hedge and a slope of barberry, which is very sticky; has a lot of stickers on it. I go right after her into the hedge on top of her, and put all of the flames out on her. Rub them all out of her clothes. And then she comes up and we go up into her room where I put olive oil on the burns for her."

However, the mother and son do not contend that appellee then knew that the turpentine was still burning or for that matter that she knew it had previously been ignited. Mr. Carroll, Sr., who was upon the premises, but some distance away from where the gasoline was delivered, stated that, after his wife asked for the gasoline, they "put the gasoline on there" (meaning upon the fire), but, before they did so, he, realizing the danger because he knew the fire was present, warned them to keep away, and that he himself left them there and ran into the house. From this point he saw the gasoline ignite and saw appellee run to the fire and become enveloped in the flames. So that, in addition to appellee's testimony as to how she sustained her injuries, appellants, although claiming that her injuries were caused when she ran into the fire, do admit that they knew of the presence

of the fire under the boxwood, and this was unknown to appellee. Mrs. Carroll also admits that her son, who was assisting her and acting under her directions, poured some of the gasoline near the fire, and the husband, who likewise observed it, and, knowing the presence of the fire under the boxwood, sensed that danger was imminent. A consideration of this testimony offered by appellants, coupled with that of appellee, has convinced us that it cannot be said as a matter of law that there was no legally sufficient evidence to support a recovery by appellee, and, although the latter was somewhat confused in some of her statements, the evidence was sufficient to require its submission to the jury to characterize it and resolve its conflicts. *Gavin v. Tinkler,* 170 Md. 461, 184 A. 903; *Porter v. Greenbrier Quarry Co.,* 161 Md. 34, 155 A. 428.

We are also of the opinion that the trial court's action in refusing appellants' H prayer for a directed verdict because of appellee's contributory negligence, was proper. It is urged that, because of appellee's admission that she would not have been burned had she remained where the gasoline was delivered, and her further admission that she realized the lighted match was to be applied to the gasoline, logically warrant this instruction, but such argument entirely ignores her statement that she did not believe the lighted match was to be applied before she could get away. In view of this explanation from her, we think it cannot be said that she was guilty of any such prominent and decisive act of negligence that men of ordinary minds would not differ in characterizing it, and, under such circumstances, it became the function of the jury, rather than the court, to pass upon the question. *Rosenthal v. Durkin,* 142 Md. 18, 119 A. 685; *Burns v. Baltimore,* 138 Md. 582, 115 A. 111; *Riley v. State,* 140 Md. 137, 117 A. 237; *Cohen v. Herbert,* 145 Md. 195, 125 A. 707; *Ottenheimer v. Molohan,* 146 Md. 175, 126 A. 97; *Askin v. Moulton,* 149 Md. 140, 131 A. 82; *Friedman v. Hendler Creamery Co.,* 158 Md. 131, 148 A. 426; *Tri-State Engineering Co. v. Graham,* 158 Md. 328, 148 A. 439; *Storrs v. Hink,* 167 Md. 194, 195, 173 A. 66.

Appellants' fourth prayer reads as follows: "The Court instructs the Jury that if they shall find from all the evidence in this case that the Plaintiff unnecessarily by her own actions placed herself in a dangerous position; and if they further find that there were other positions that she might have taken in connection with the discharge of her duty; and if they further find that such other positions were reasonably safe; then the Plaintiff is guilty of negligence and she is not entitled to recover and the verdict of the Jury must, therefore, be for the Defendants." That prayer was refused by the court, and in lieu thereof the court granted an instruction marked "Court's Prayer" as follows: "The Jury are instructed that if they find from the evidence that the Plaintiff, after seeing the fire spoken of in the evidence, voluntarily left a place of safety and went to it and attempted to stamp out the fire, if the Jury so find, and in such attempt by her to stamp out the fire her clothes caught fire and she was burned, then as a matter of law, the Plaintiff was guilty of contributory negligence directly contributing to her injuries, and the verdict of the Jury must be for the Defendants." It also granted appellants' second prayer instructing the jury that, if they believed from the evidence in the case that the plaintiff was guilty of any negligence which directly contributed to her own injury, she was not entitled to recover, and their verdict must be for the defendants. Appellants urge that the refusal of their fourth prayer constitutes reversible error, but with this contention we do not agree, since, if we assume the correctness of that instruction, the error in its rejection would not be injurious, in view of the court's action in granting their second prayer and the court's prayer. These in our judgment submitted the question of appellee's contributory negligence in as favorable light as appellants could ask for. Indeed, the court's prayer was so framed as to preclude recovery by appellee if the jury accepted appellants' testimony as to how her injuries were sustained.

*Judgment affirmed, with costs to appellee.*