## THE TRAVELERS INSURANCE COMPANY
*v.* GODSEY ET AL.

[No. 259, September Term, 1970.]

*Decided February 4, 1971.*

*Motion for rehearing filed February 25, 1971; denied March 2, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY, SMITH and DIGGES, JJ.

*H. Thomas Sisk,* with whom were *Carr, Scott, Thompson & Diguguid* and *William N. Rogers* on the brief, for appellant.

*George W. Shadoan,* with whom were *Shadoan & Mack* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

Linda Godsey, an infant who was a passenger in an automobile which struck another car, sued Karl Doepel, an infant who occupied the driver's seat of the car in which she was riding. He was an insured under a policy issued by the Travelers Insurance Company, the appellant. Travelers furnished the defense in Godsey's suit against Doepel as its policy required. The jury returned a verdict for Godsey in the amount of $28,500. Travelers had earlier refused to settle for $16,000, the limit of the policy, but after the verdict it arranged with Godsey to have entered a consent judgment for $16,000. Travelers says this was to protect Doepel against liability for the $12,500 excess of the verdict over the coverage; Godsey says it was to protect Travelers from claim by Doepel that it was liable to pay the $12,500 because it had unreasonably failed to settle for the policy limit. Either or both may be right but in any event Travelers issued two drafts in payment of the consent judgment, one for $1,000 and one for $15,000, each payable to Godsey, her mother and her lawyer. Before the drafts were cashed, Travelers stopped payment, having just then found out fortuitously that the account of the accident and its cause that Godsey and Doepel had given its investigators and its lawyer and to which they had testified at the trial were in material and prejudicial variance with the facts. Each of them had said that Doepel was driving and Godsey was sitting on the console between the front seats when suddenly and unexpectedly the brakes failed. The later information furnished Travelers, the truth of which it became convinced, was that Doepel and Godsey were playing a game entitled "chicken" which called for Doepel

in the driver's seat to face the rear and talk to those on the back seat, while operating the foot pedals, and for Godsey, sitting on the console, to grasp the wheel and steer the car.

Travelers claims that Godsey and Doepel agreed that she would accept recovery only to the extent of the insurance coverage and not collect from Doepel, and that in furtherance of this aim they fraudulently colluded in withholding the true facts and in substituting a version of the accident that would bring about a settlement or verdict in her favor, and that this was a breach of Doepel's obligation to cooperate in the defense of the claim against him, which released the insurer from liability under its policy, since the tort judgment creditor's rights do not rise above those of the insured tortfeasor.

Travelers moved to set aside the consent judgment and Godsey opposed the move. Travelers then withdrew its motion, its lawyer withdrew from the case, and the consent judgment became final.

The three payees of the drafts brought suit for $16,000 based on the dishonoring of the drafts. Judge Miller granted the plaintiffs' motion for summary judgment, brushing aside the matters of the conduct of Godsey and Doepel and the question of whether the tort judgment effected a collateral estoppel on the insurer, holding that Travelers had agreed to pay $16,000 for a $28,500 judgment and was bound under that contract to pay the drafts since no fraud in the inducement of its choice to so contract had been shown.

Once more we are presented a bobtailed record which does not include the insurance policy and contains nothing as to the tort case except statements of the parties. Nevertheless, we think there is enough before us to require reversal of the summary judgment so that Travelers can have a day in court in which to prove, if it can, its allegations of fraud and collusion that would excuse it from liability under its policy.

It seems to be conceded that the cooperation clause in

the policy does not vary significantly from the standard provisions in such policies. The contractual obligation to cooperate with the insurer includes the obligation to make a fair, frank and truthful disclosure to the insurer for the purpose of enabling it to determine whether or not there is a defense, and the obligation, in good faith, both to aid in making every legitimate defense to the claimed liability and to render assistance in the trial. *U. S. Fid. Co. v. Williams,* 148 Md. 289, 304-306, 307; *Automobile Ins. Co. v. Garlitz,* 180 Md. 615, 618-619; *Indemnity Ins. Co. of N. A. v. Smith,* 197 Md. 160, 164-165; *Fid. & Cas. Co. v. McConnaughy,* 228 Md. 1, 7. *McConnaughy* held that to avoid liability under the policy the insurer must show prejudice resulting from the failure to cooperate, and changed the earlier Maryland rule that, at least in instances of noncooperation by misleading, prejudice need not be shown. After this Court shortly thereafter held in *Watson v. U. S. F. & G. Co.,* 231 Md. 266, that failure of the insured to give notice of the accident enabled the insurer to avoid liability without showing prejudice, the legislature at its next session enacted § 482 of Art. 48A of the Code which now provides that:

> "Where an insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer."

See *State Farm v. Hearn, Adm'x,* 242 Md. 575, 582; *Home Indemnity Company v. Walker,* 260 Md. 684, 273 A. 2d 429 (1971).

We have no doubt that a deliberate misleading of the insurer by the insured in collaboration with the claimant

to make it appear that the claimant was free from negligence or assumption of the risk when in fact he clearly had been negligent or clearly had assumed the risk, would be a fraudulent violation of the obligation to cooperate that would excuse the insurer from liability under its contract to indemnify its insured. 8 *Appleman, Insurance Law and Practice*, §§ 4779 and 4782 (1942) ; *Casualty Co. v. Mitnick*, 180 Md. 604, 608 ; *Automobile Ins. Co. v. Garlitz* and *Fid. & Cas. Co. v. McConnaughy*, both *supra; Medico v. Employers' Liability Assur. Corporation* (Me.), 172 A. 1; *Employers Mutual Cas. Co. v. Nelson* (N. H.), 241 A. 2d 207, 210-211; *Bertinelli v. Galoni* (Pa.), 200 A. 58, 60; *State Farm Mutual Automobile Ins. Co. v. Shelton* (Ky.), 368 S.W.2d 734, 737; *Manning v. State Farm Mutual Automobile Insurance Co.* (W.D. N.C.), 235 F. Supp. 615, 617-618; *Storer v. Ocean Accident & Guarantee Corporation* (6th Cir.), 80 F. 2d 470, 472; *Great American Insurance Co. of New York v. Dennis* (W.D. Ky.), 203 F. Supp. 482.

The Maryland cases we have cited earlier make it plain that the right of the injured claimant to collect from the insurer of the one who harmed him derives from the contract right of the tortfeasor to have the insurer pay for him within the policy limit what otherwise he would be liable to pay. As the third party beneficiary of the insurance contract, the claimant stands in the shoes of the insured wrongdoer and vis-a-vis the insurer his rights are no greater than those of the insured's. See *Shillman v. Hobstetter*, 249 Md. 678, 690. It makes no difference that here the third party beneficiary is suing on drafts issued by the insurer to pay the debt of its insured to the claimant, rather than as is usually or often the case, seeking to recover on an attachment laid in the hands of the insurer after judgment has been recovered against the insured. Whatever procedural mode the claimant follows, the effort is to compel the insurer to pay the insured's obligation to the claimant, and therefore in such a situation that which we call a rose by any other name would smell as sweet.

Travelers has never waived, or acted so as to become estopped to assert, its defense to liability under its policy. Justifiably unaware of information that if true would obviate its necessity to act as it did, it defended its insured as its contract required and it offered payment of the judgment against its insured as its policy required but, as soon as it acquired knowledge that to it demonstrated that its insured had breached the insurance contract so materially and substantially that its liability had ceased before the tort trial began, it recalled immediately its offer to pay the judgment against its insured. This, we think, it was entitled to do. An insurer will not be estopped from asserting a breach of the cooperation clause by its insured if it repudiates liability within a reasonable time after becoming aware of the insured's failure to cooperate. *Apex Mutual Insurance Company v. Christner* (App. Ct. Ill.), 240 N.E.2d 742, 748; *Manning v. State Farm Mutual Automobile Insurance Co.* and *State Farm Mut. Auto Ins. Co. v. Shelton,* both *supra.*

All very well and an abstractly interesting polemic, says Godsey, but the controlling thing here is that Travelers not only participated in but controlled the tort trial and therefore is fully bound by the judgment in that case which established that Doepel had been negligent and Godsey free from negligence. Compare *Glens Falls Ins. v. Amer. Oil Co.,* 254 Md. 120, 134-135, and see James, *Civil Procedure* § 11:27 at 590 (1965) and 1 B *Moore's Federal Practice* § 0.405 [9] (2d ed. 1965). Godsey adds that in substance what Travelers seeks is to nullify the first judgment on a claim of perjured testimony and that, under *Maryland Steel Co. v. Marney,* 91 Md. 360, and *Wilmer v. Placide,* 127 Md. 339, this cannot be done. This misconceives the point. Travelers, as it must be, is content to let the judgment stand against Doepel but asserts that it need not pay that judgment because Doepel breached his contract agreement to cooperate. Godsey's contention that Travelers is bound by the judgment's establishment that Doepel was negligent and Godsey not negligent is sound as far as it goes, but the doctrine of

collateral estoppel she asserts does not extend far enough to accomplish the result she seeks.

We had occasion to observe in *Sterling v. Local 438, Etc.*, 207 Md. 132, 140-141, that:

> "Estoppel by judgment, which is *res judicata,* may be direct or collateral. If the second suit is between the same parties and is upon the same cause of action, a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which could have been litigated. If, in a second suit between the same parties, even though the cause of action is different, any determination of fact [or mixed law and fact], which was actually litigated in the first case, is conclusive in the second case."

Godsey's claim of collateral estoppel is not weakened by the fact that the tort judgment was by consent. The old and still generally prevailing rule is that a judgment by consent is as sound a base on which to ground collateral estoppel as a judgment after an adversary trial. Some more recent cases hold, and the law professors urge, that a consent judgment should later be conclusive only to the extent the parties intended. See Annotation, *Consent Judgment as Res Judicata,* 2 A.L.R.2d 514, particularly § 11 at 543-546; James, *Consent Judgments as Collateral Estoppel,* 108 U. Pa. L. Rev. 173; *Moore's Federal Practice* § 0.444 [3] at 4022-4023. But, not surprisingly, there is agreement that a judgment which reflects consent only as to amount following a judicial determination as to liability has the same effect and goes as far in the matter of collateral estoppel as a regular judgment because in such instance there is present the judicial adjudication of issues that is lacking where the consent is as to issues as well as to amount. *Moore's Federal Practice* § 444 [3] Note 46, at 4022; *Macheras v. Syrmopoulos* (Mass.), 66 N.E.2d 351, 352.

Godsey's claim fails because collateral estoppel extends

only to issues that were litigated and determined in the first trial and the issue as to whether Travelers was released from liability because the cooperation clause had been breached was not and indeed could not have been an issue in the tort trial. *Restatement of Judgments* § 107 says:

> "In an action for indemnity between two persons who stand in such relation to each other that one of them has a duty of indemnifying the other upon a claim by a third person, if the third person has obtained a valid judgment on this claim in a separate action against
>
> (a) the indemnitee, both are bound as to the existence and extent of the liability of the indemnitee, if the indemnitee gave to the indemnitor reasonable notice of the action and requested him to defend it or to participate in the defense * * *."

Comment g says:

> "The rule stated in Clause (a) binds both the indemnitor and the indemnitee only upon issues relevant to the proceeding. The judgment against the indemnitee does not decide issues as to the existence and extent of the duty to indemnify. Thus, in a subsequent action the indemnitor may show that the circumstances under which he is required to give indemnity do not exist. For example, in an action by a surety against a person claimed to be a principal obligor, the latter may show that he never assumed the obligation, or that he was a co-surety or a surety for the claimant, or that he was induced to enter into the transaction by the fraud of the claimant."

See *Moore's Federal Practice* § 0.443 [4] ; *Travelers Indemnity Co. v. State Farm Mutual Auto. Ins. Co.* (9th

Cir.), 330 F. 2d 250, and compare *Glens Falls Ins. Co. v. Amer. Oil Co.*, 254 Md. 120, cited earlier.

Travelers must be afforded an opportunity to prove its allegations that there was noncooperation that released it from its obligation to pay Godsey's judgment.

> *Case remanded, without affirmance or reversal for further proceedings appropriate under the views hereinabove e x p r e s s e d, costs to abide the ultimate result.*