## FRONTIER VAN LINES, INC. *v.* MARYLAND BANK & TRUST COMPANY

[No. 171, September Term, 1974.]

*Decided May 7, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Sheldon P. Schuman,* with whom were *Koepenick, Patterson, Schuman & Donahue* on the brief, for appellant.

*Robert M. Wright,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* and *Joseph D. Weiner* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

In this case, we are called upon once again to consider the application of the doctrine of res judicata. Frontier Van Lines, Inc. (Frontier), a Kansas corporation engaged in the moving business, has a branch office in Lexington Park, Maryland, since a large part of its business consists of moving service personnel to and from the Patuxent River Naval Air Station. When Frontier discovered that a substantial number of United States Treasury checks issued to it had been converted to his own use by C. Jerry Groh, an officer of Frontier, Frontier turned its efforts to recouping its loss.

Payments in restitution were made by the embezzler, but these ceased when the amount of $11,000.00 was reached. In April, 1973, Frontier brought suit in the Circuit Court for St. Mary's County against Maryland Bank & Trust Company (the Bank), alleging that when Frontier had opened its account with the Bank's predecessor, both the corporate resolution and the signature card provided that the signatures of both L. M. Van Hise, president, and C. Jerry Groh, vice president, were required for the drawing and endorsement of checks; that Treasury checks totaling $58,263.47, endorsed "Frontier Van Lines, Inc." or "Frontier Van Lines, Inc., C. Jerry Groh" had been cashed for Groh by the Bank during the period September, 1970 to June, 1971; and that after crediting the $11,000.00 received from Groh in restitution, Frontier had sustained a loss of $47,263.47 as a consequence of the Bank's unauthorized cashing of the checks.

The case was subsequently removed to Calvert County, where on 8 March 1974, a consent judgment for $12,000.00 was entered in Frontier's favor against the Bank. An order of satisfaction was entered on 11 April.

On 2 April 1974, Frontier revisited the Circuit Court for St. Mary's County, where it filed a second action against the Bank. The averments of the second declaration were virtually identical with those of the first: only the ad damnum of $52,156.54 was different, and there was a new

allegation that the period during which the defalcations occurred extended from September, 1970 to September, 1971 (and not June, as had been alleged in the first suit) and that the Bank had given Groh cash for checks drawn to Frontier's order and endorsed "For Deposit."

The Bank countered with a motion raising preliminary objection grounded on res judicata. The case was again removed to Calvert County, where the motion was granted and the case was dismissed. This appeal followed.

The rule of our cases was stated for the Court by Judge Marbury in *Alvey v. Alvey*, 225 Md. 386, 390, 171 A. 2d 92, 94 (1961):

> "The doctrine of *res judicata* is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit, where the court had jurisdiction, proceedings were regular, and his omission was due to his own negligence. [citing cases]"

*Compare Pat Perusse Realty v. Lingo*, 249 Md. 33, 35, 238 A. 2d 100, 102 (1968) and see *Travelers Insurance Co. v. Godsey*, 260 Md. 669, 676, 273 A. 2d 431, 435 (1971) which distinguishes the doctrine of res judicata from that of collateral estoppel, a distinction which we intend to observe notwithstanding what might be regarded as a contrary intimation in *Missler v. Anne Arundel County*, 271 Md. 70, 77, 314 A. 2d 451, 456 (1974).

Frontier would clear the *Alvey* hurdle by maintaining that there was a lack of identity of subject matter: that a different group of checks was the subject of the second suit. There are two answers to this: Frontier's own declaration concedes that the improper handling of the "For Deposit" checks had been discovered in August, 1971, with the result that they could have been made the subject of the first suit

filed in April, 1973. Second, for some reason which eludes us, Frontier took credit for the $11,000.00 restitution and the $12,000.00 consent judgment in computing the damages claimed. Whether any of the checks which had been included in the first suit had been taken into account in the computation of damages in the second suit is unclear. What is clear, however, is that the second group of checks could have been litigated in the first suit.

As Judge Bowen, in dismissing the action, after commenting on the similarity of the two declarations, quite correctly noted,

> "There is an absolute bar to a second suit if the subject matter was or should have been litigated in the first between the same parties . . . ."

The ruling of the trial court is in full accord with the principle set forth by this Court in *Sterling v. Local 438,* 207 Md. 132, 140, 113 A. 2d 389, 393 (1955):

> "If the second suit is between the same parties and is upon the same cause of action, *a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which could have been litigated.*" (Emphasis supplied.)

We have more recently reaffirmed this view using similar language in *Travelers Insurance Co. v. Godsey, supra,* 260 Md. at 676 and *A. B. Veirs, Inc. v. Whalen,* 256 Md. 162, 166-67, 259 A. 2d 516, 518-19 (1969).

*Ex parte Carlin,* 212 Md. 526, 532-33, [*In re Carlin's Estate,*] 129 A. 2d 827, 831 (1957), dealing with an analogous factual situation, involved a case in which a son alleged an agreement between his father and himself for legal services to be rendered by the son on behalf of his father. In an incompetency proceeding the son petitioned for and was granted fees for the years 1951 through 1953. After his father's death, the son made a claim against the estate for

fees for the years 1937 through 1950. In denying this claim, the Court said:

> "It is well established that a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for the various parts thereof. A judgment or decree in a suit for a part only of a single cause of action or entire claim permits res judicata to be successfully relied on if the remainder is sued on later."

Of similar effect is *Whitehurst v. Rogers,* 38 Md. 503, 515 (1873) involving a suit for trademark infringement where the plaintiff had earlier brought suit alleging different violations of his right and lost:

> "It is not the *same act* that is passed upon always in a case of former recovery; but if the same question of right is involved in the second case, as was tried and determined in the first, whatever distance in time occurs between the acts, bringing the right in question, the former decision is equally effective." (Emphasis in original.)

> *Order affirmed.*
> *Costs to be paid by appellant.*