555 A.2d 486

**Michael WELSH et al.**

v.

**GERBER PRODUCTS, INC. et al.**

**Misc. No. 19, Sept. Term, 1987.**

Court of Appeals of Maryland.

March 30, 1989.

Robert Allen Rohrbaugh (Rohrbaugh & Abbondanza, P.C., both on brief), Rockville, for appellants.

Deborah Sweet (Louis G. Close, Jr., Ann MacNeille, Whiteford, Taylor & Preston, all on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

McAULIFFE, Judge.

We address a question certified to us by the United States Court of Appeals for the Fourth Circuit pursuant to the Maryland Uniform Certification of Questions of Law Act.[1] The question involves the scope and reach of nonmutual, defensive, collateral estoppel following the entry of a consent judgment, and affects the rights of parties in a joint tort-feasor situation. Because the question fashioned by the certifying court is fact-specific, we first set forth the facts as given to us.

## I.

"On January 26, 1983, a station wagon occupied by [Michael Welsh, a minor, and his parents, Kathleen and Patrick Welsh] was struck by a van driven by James Voigt, II. All three members of the family were hurt, but Michael suffered head injuries that were of a particularly severe and permanent nature. At the time of the accident, Michael was sitting in a Century 200 car seat manufactured by Gerber [Products Inc.]. For reasons yet unsettled, the seat failed to restrain the child and he was thrown forward by the force of the accident.

"On February 9, 1984, the Welshes brought a negligence action in the Circuit Court of Maryland for Montgomery County against Voigt. The parties subsequently agreed on June 18, 1985, to settle the litigation for a payment equal to the policy limits of Voigt's automobile insurance coverage. The proposed settlement was announced in open court with plaintiffs' counsel stating that 'We are accepting the policy limits without prejudice to any rights we have against other individuals, or insurance carriers.' The court approved the settlement subject to the preparation of an order and directed that a docket entry be made reflecting that the case had been terminated by settlement. No such entry, however, was ever made.

---

**1.** Sections 12–601 thru 12–609 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1984 Repl.Vol.).

"On July 25, 1986, the parties executed a written copy of their agreement which provided for a payment of $290,423.00 by Voigt's insurance carrier to Continental Casualty Company (Continental). Continental, as payor of a 'structured' payout arrangement, was to make both immediate and deferred payments to Michael Welsh.[2] The Welshes also executed a release in favor of Voigt which purported to retain all claims against other tort-feasors subject to the *pro rata* reduction provided in the Maryland Uniform Contribution Among Tort-feasors Act, Md.Ann. Code Art. 50 §§ 16–24.

"It appears, however, that Voigt was unwilling to terminate the case purely by agreement with Kathleen and Patrick Welsh, thereby risking additional litigation when Michael Welsh reached maturity. Accordingly, Voigt insisted that a judgment be entered that would fully terminate any liability he might have arising from the accident.

"On July 26, 1985, the parties filed a joint motion for approval of the negotiated settlement agreement. The court approved the agreement. Then, with the consent of the parties, the court signed an order entering judgment against James Voigt and in favor of the Welshes. The parties filed a 'Statement of Satisfaction of Judgment' reflecting the fact that Voigt's insurance carrier had made the agreed payment to Continental. Finally, the clerk entered the judgment 'PAID AND SATISFIED' on the docket sheet and assessed costs against Voigt.

"On January 21, 1986, the Welshes filed [an] action [in the United States District Court for the District of Maryland against Gerber, Century Products Inc., and Sears Roebuck & Company], alleging that the car seat in which Michael was seated at the time of the accident failed to restrain him and thus was the proximate cause of the

---

**2.** Under the deferred payment plan, Michael Welsh will receive payments in the nature of an annuity well into the twenty-first century.

injuries sustained.[3] The defendants moved for summary judgment on the ground that the satisfied state judgment against Voigt precluded, as a matter of law, any effort to recover damages on behalf of Michael for the same injury. The district court agreed and summary judgment was granted."

## II.

The Welshes presented two lines of argument to the United States Court of Appeals. First, they argued that the judgment entered by the Circuit Court for Montgomery County had not been fully satisfied because payments remained to be made, and the mere entry of a judgment against one tort-feasor did not release other joint tort-feasors. *See* Art. 50, § 18, Maryland Code (1957, 1986 Repl. Vol.); *Trieschman v. Eaton,* 224 Md. 111, 166 A.2d 892 (1961). The Fourth Circuit rejected this argument, noting that the judgment in favor of the Welshes against Voigt had been satisfied by full payment made by Voigt's insurer, and the fact that the payment had been made to a third party for purchase of an annuity to effectuate a "structured" settlement did not alter the legal effect of the payment as full satisfaction of the judgment. *Welsh v. Gerber Products Inc.,* 839 F.2d 1035, 1038 (4th Cir.1988).

The Welshes' second argument was that their settlement with Voigt was not intended to represent an evaluation of the full measure of their injuries, but was simply an acceptance of the amount of Voigt's insurance coverage in return for the release of Voigt. The Welshes point out that in their agreement with Voigt they expressly reserved the right to proceed against others in an attempt to recover the balance of the money they believed was due them. Thus, they submit, the rule that there may be but one full satisfaction for one injury does not apply, because they

---

3. The injuries described in the complaint against Gerber were essentially identical to those alleged in the state negligence action against Voigt.

made it clear, and Voigt agreed, that their recovery from Voigt was not considered to be, and was not to be treated as, adequate compensation for their injuries.

Gerber's response is that the Welshes' argument would have been entirely valid had their settlement with Voigt been fully accomplished by the exercise of the joint tort-feasor release. When they went beyond that, says Gerber, and secured the entry of a judgment, they placed on record a judicial determination of the value of the claim, and when that judgment was satisfied, the Welshes were precluded from seeking further compensation from anyone.

 The United States Court of Appeals, noting that the language of several of our earlier cases appeared to favor Gerber's position,[4] but that we had recently expressed a certain dissatisfaction with the mechanical application of the law in joint tort-feasor cases when it conflicted with the unambiguous contrary intent of the parties,[5] certified this question to us:

> Under Maryland law does the entry of a satisfied judgment order in *Welsh v. Voigt* in the Circuit Court for Montgomery County, Maryland, preclude as a matter of law, any further claims by the Welshes against Gerber *et al.* for injuries suffered by Michael Welsh in the January 23, 1983, automobile accident?

We answer the question "no." A consent judgment does not necessarily include an actual adjudication of the issue of damages, and in appropriate circumstances a subsequent

---

**4.** The certifying court noted its particular concern with the holdings in *Bell v. Allstate Insur. Co.*, 265 Md. 727, 291 A.2d 478 (1972) and *Grantham v. Prince George's County*, 251 Md. 28, 246 A.2d 548 (1968). Other representative cases involving claim or issue preclusion following the entry of a consent judgment or its equivalent include: *MPC, Inc. v. Kenny*, 279 Md. 29, 367 A.2d 486 (1977); *Frontier Van Lines v. Md. B. & Tr. Co.*, 274 Md. 621, 336 A.2d 778 (1975); *Missler v. Anne Arundel County*, 271 Md. 70, 314 A.2d 451 (1974); *Travelers Insur. Co. v. Godsey*, 260 Md. 669, 273 A.2d 431 (1971); and *Cox v. Md. Elec. Rwys. Co.*, 126 Md. 300, 95 A. 43 (1915).

**5.** *See Morgan v. Cohen*, 309 Md. 304, 523 A.2d 1003 (1987).

inquiry should be made to determine what the parties intended and whether the consent judgment represents an actual adjudication of a particular issue. We explain.

Gerber's principal argument is that a judgment occupies a very special place in the eyes of the law and carries with it a cloak of conclusiveness and finality that rarely should be lifted. Without disagreeing with this concept, we point out that the binding consequences of a judgment take several forms. First, and perhaps foremost in terms of the desirability of finality, is the impact that a judgment has upon the claims at issue between the parties to the proceeding. The governing principle there, which is generally referred to as *res judicata,* or perhaps more precisely as the claim preclusion arm of *res judicata,* is that:

> [A] judgment between the same parties and their privies is a final bar to any other suit upon the *same cause of action* and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety *could have been litigated* in the first suit....

*MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486 (1977), quoting *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961) (emphasis in original).

*See generally, Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 525 A.2d 232 (1987).

A second aspect of the finality of judgments between the parties is the concept of issue preclusion. This principle, known as collateral estoppel, is that in a second suit between the same parties, even if the cause of action is different, any determination of fact that was actually litigated and was essential to a valid and final judgment is conclusive. *See Kent County Bd. of Educ., supra,* 309 Md. at 490, 525 A.2d 232; *MPC, Inc., supra,* 279 Md. at 32, 367 A.2d 486; *Sterling v. Local 438, etc.,* 207 Md. 132, 143, 113 A.2d 389, *cert. denied,* 350 U.S. 875, 76 S.Ct. 119, 100 L.Ed. 773 (1955); *Frontier Van Lines v. Md. B. & Tr. Co.,* 274 Md. 621, 624, 336 A.2d 778 (1975); *Travelers Insur. Co. v. Godsey,* 260 Md. 669, 676, 273 A.2d 431 (1971).

The case before us presents no challenge to the sanctity of these rules of finality. Rather, it deals with a developing area of the law that addresses the desirability of granting or imposing the benefit or burden of issue preclusion in situations where there is not a complete identity of parties. This principle, known as nonmutual collateral estoppel, is almost as simple in concept as it is difficult in application. Conceptually, there will be instances in which a party who has had the benefit of a full and fair adjudication of an issue should be bound by that adjudication, even in a subsequent proceeding involving a different party. The difficulty is, however, that there are many situations where application of the doctrine of nonmutual collateral estoppel would be manifestly unfair.

As Professor Gershonwitz points out in his article *Issue Preclusion: The Return of the Multiple Claimant Anomaly*, 14 U.Balt. L.Rev. 227, 230 n. 20 (1985), the requirement of mutuality for the application of collateral estoppel was not rejected by the United States Supreme Court until 1971. *See Blonder–Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). We discussed the requirement of mutuality in *Pat Perusse Realty v. Lingo*, 249 Md. 33, 238 A.2d 100 (1968), and there upheld the use of defensive nonmutual collateral estoppel. The United States District Court for the District of Maryland (Northrop, J.) had reached the same conclusion one year earlier. *State of Maryland v. Capital Airlines, Inc.*, 267 F.Supp. 298, 303–04 (D.Md.1967).

In the relatively short time that the doctrine of nonmutual collateral estoppel has been developing, some significant determinations have been made. In *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court noted the different problems that may be presented depending upon whether the use of nonmutual collateral estoppel is offensive or defensive,[6] and

---

**6.** Offensive use of nonmutual collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the

conditionally approved the offensive use of nonmutual collateral estoppel. In *Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court held that nonmutual collateral estoppel may not be applied against the government in criminal cases. *See also, Carbaugh v. State,* 294 Md. 323, 330, 449 A.2d 1153 (1982) (nonmutual defensive collateral estoppel not available to the defendant in a criminal proceeding). In *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the Supreme Court held that nonmutual offensive collateral estoppel could not be applied against the government in a civil case. The American Law Institute has stated its views on the use of nonmutual collateral estoppel at § 29 of the *Restatement (Second) of Judgments* (1982).

We are concerned here with Gerber's attempt to use defensively the doctrine of nonmutual collateral estoppel. Gerber points to the judgment rendered in the earlier proceeding brought by the Welshes against Voigt, and argues that the Welshes should be bound by the issues litigated in that case. Gerber is correct as far as it goes, but it does not go far enough. The Welshes may be bound by the issues actually and necessarily litigated in that proceeding. The foundation of the rule of nonmutual collateral estoppel is that the party to be bound must have had a full and fair opportunity to litigate the issues in question. When an issue was not required to be litigated and was not in fact litigated, the judgment ordinarily will not preclude its subsequent litigation.

As a factual matter, a consent judgment may, or may not, involve a determination of the amount that represents the complete equivalent of the plaintiff's damages. Where, as

defendant has previously litigated unsuccessfully in another action against a different party. Defensive use of nonmutual collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different party. *United States v. Mendoza,* 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571 n. 4, 78 L.Ed.2d 379 (1984).

apparently is the case here, the parties make no attempt to agree upon or litigate the fair value of the claim, but agree instead to accept the available insurance coverage while specifically reserving the right of the plaintiff to proceed against others for full compensation, a consent judgment entered to give effect to the agreement does not in fact represent the result of litigation of the issue of damages. On the other hand, the parties to a proceeding are not precluded from reaching an agreement concerning the full measure of damages, and where a judgment is entered in confirmation of that type of agreement, it will represent the judicial determination, albeit by consent, of that issue.

At an earlier time, the differing factual bases for the entry of consent judgments were not given a great deal of attention by the courts and commentators, and generally no distinction was made between consent judgments and trial judgments for purposes of determining their subsequent preclusive effect. Moreover, in Maryland an entry on the docket of "paid, settled and satisfied" made at the direction of the plaintiff was afforded the preclusive effect of a consent judgment. *Missler v. Anne Arundel County*, 271 Md. 70, 78, 314 A.2d 451 (1974). *See also, Cox v. Md. Elec. Rwys. Co.*, 126 Md. 300, 304, 95 A. 43 (1915) (the entry of the suit "settled" was done under the eye and with the sanction of the Court and should be considered as a judicial act not open to question or controversy in any collateral proceeding). In *Travelers Insur. Co v. Godsey, supra*, 260 Md. at 676, 273 A.2d 431, Chief Judge Hammond, while stating the usual rule, noted that the question was being reexamined:

The old and still generally prevailing rule is that a judgment by consent is as sound a base on which to ground collateral estoppel as a judgment after an adversary trial. Some more recent cases hold, and the law professors urge, that a consent judgment should later be conclusive only to the extent the parties intended.

One of the law professors to whom the *Godsey* Court made reference was Professor Fleming James, Jr., of Yale Univ-

ersity, who authored the article, *Consent Judgments as Collateral Estoppel,* 108 U.Pa.L.Rev. 173 (1959). After a careful and scholarly review of the subject, Professor James concluded as follows:

> Where the agreement upon which a consent judgment is based is fairly to be construed as providing that the parties should be bound collaterally upon a certain point, that agreement will and should generally be given effect. An intention to be bound in this way should not however be found unless the language or admissible evidence affirmatively points to it, and such an intention should not be inferred from the circumstance, taken alone, that the agreement or judgment contains a stipulation or recital of the fact's existence.

> Where the parties to a consent judgment have not agreed to be thus bound, the rules pertaining to the effect of judgments do not require that they should be, and the relevant considerations of policy and expediency require that they should not be. *Id.* at 193.

*See also,* Note, *The Consent Judgment as an Instrument of Compromise and Settlement,* 72 Harv.L.Rev. 1314, 1319–21 (1959).

A growing number of courts generally have agreed that consent judgments should not be given collateral estoppel effect except where the parties intended that result or the issue was actually litigated. *See, e.g., Lawlor v. National Screen Service,* 349 U.S. 322, 328, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955); *U.S. v. International Building Co.,* 345 U.S. 502, 506, 73 S.Ct. 807, 809, 97 L.Ed. 1182 (1953); *Balbirer v. Austin,* 790 F.2d 1524, 1528 (11th Cir.1986); *Avondale Shipyards, Inc. v. Insured Lloyd's,* 786 F.2d 1265, 1272–73 (5th Cir.1986); *Southern Pacific Com. v. American Tel. & Tel. Co.,* 740 F.2d 1011, 1021 (D.C.Cir. 1984); *Seaboard Air Line R.Co. v. George F. McCourt Trucking, Inc.,* 277 F.2d 593, 597 (5th Cir.1960); *Fruehauf Trailer Co. v. Gilmore,* 167 F.2d 324, 330 (10th Cir.1948); *Sarkis v. Harsco Corporation,* 332 A.2d 156, 158–59 (Del. Super.1975); *Burgess v. Consider H. Willett, Inc.,* 311 Ky.

745, 225 S.W.2d 315, 317 (1949); *Hentschel v. Smith,* 278 Minn. 86, 153 N.W.2d 199, 203–05 (1967); *Milicevich v. Sacramento Medical Center,* 155 Cal.App.3d 997, 202 Cal. Rptr. 484, 488 (1984); *Blakely v. Couch,* 129 Ga.App. 625, 200 S.E.2d 493, 496–97 (1973); *Sleck v. Butler Brothers,* 53 Ill.App.2d 7, 202 N.E.2d 64, 67 (1964); *Am. Mut. Liability Ins. v. Mich. Mut. Liability,* 64 Mich.App. 315, 235 N.W.2d 769, 776 (1975); *Owen v. City of Branson,* 305 S.W.2d 492, 497 (Mo.App.1957).

In *U.S. v. International Building Co., supra,* 345 U.S. at 506, 73 S.Ct. at 809, Justice Douglas said for the Supreme Court:

> Certainly the judgments entered are *res judicata* of the tax claims for the years 1933, 1938, and 1939, whether or not the basis of the agreements on which they rest reached the merits. But unless we can say that they were an adjudication of the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits. Estoppel by judgment includes matters in a second proceeding which were actually presented and determined in an earlier suit. A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties. (citations omitted).

At 1B *Moore's Federal Practice* § 0.444[3] at 814 (2d ed. 1988), the authors state:

> We believe, therefore, that collateral estoppel in its usual connotation should not result from a consent judgment, because the requisite litigation and judicial determination of issues are not normally present. But, on the other hand, we believe that a preclusion ought to result from a judgment on an agreement, to the extent that the parties agree to be precluded. (footnotes omitted).

Section 27 of the *Restatement (Second) of Judgments* (1982) requires, as a prerequisite to the application of nonmutual collateral estoppel, that the issue sought to be precluded must have been "actually litigated."

The question presented to us does not require that we resolve all issues concerning the preclusive effects of a consent judgment.[7] We address, therefore, the applicability of nonmutual defensive collateral estoppel following a consent judgment entered under the circumstances here described. We accept the modern view that litigation of the issue of damages is not precluded by the entry of a consent judgment unless that issue was actually litigated, or the parties intended preclusion of that issue. We reject as unrealistic the notion that every consent judgment necessarily embodies actual litigation of the issue of damages.

In so holding, we overrule *Grantham v. Prince George's County*, 251 Md. 28, 246 A.2d 548 (1968). In *Grantham*, a negligence action was pending against a doctor and a hospital when the plaintiffs entered into a settlement with the doctor. A joint tort-feasor release was executed, and it was originally contemplated that the plaintiffs would voluntarily dismiss their claims against the doctor. Because minor plaintiffs were involved, however, the doctor insisted upon the entry of a judgment reflecting the settlement. This was done, and the judgment entered against the doctor by consent was promptly marked "paid and satisfied." The hospital then filed a plea *puis darrein continuance* and a motion for summary judgment on the ground that satisfaction of a judgment obtained against one tort-feasor barred

---

7. Specifically, we need not reach the question of whether the entry of a consent judgment for damages may preclude the defendant from subsequently litigating with a third party the issue of the defendant's negligence. In *MPC, Inc., supra,* 279 Md. at 36, 367 A.2d 486, we held that the issue of the defendant's negligence was actually, albeit implicitly, decided by the consent judgment, and the defendants were therefore bound "by the facts and issues actually determined...." We elect not to revisit *MPC, Inc.* here.

further proceedings against other tort-feasors. The trial court granted the motion and this Court affirmed.

■ Citing *Lanasa v. Beggs*, 159 Md. 311, 319, 151 A. 21 (1930), the *Grantham* Court correctly noted that "the party injured may have but one satisfaction." *Grantham, supra*, 251 Md. at 39, 246 A.2d 548. The Court also carefully distinguished the factual situation before it from that which exists when there is only a partial satisfaction of a judgment against one tort-feasor, or a release of that judgment under circumstances demonstrating that it has not been fully satisfied.[8] *Id.* at 38–39, 246 A.2d 548. What the *Grantham* Court did not do, and what we now determine must be done, was examine the consent judgment to determine whether it represented a determination of the complete equivalent of the plaintiff's damages. When an action for damages proceeds to trial and a judgment is entered on the verdict, that judgment represents a final determination of the plaintiff's claim for those damages. It is entirely appropriate to bind the plaintiff to that assessment of damages, directly and collaterally, even though the determination may be less than the plaintiff believes is fair, or may be thought to have been a result of jury compromise. If there is error in the award, relief must be sought by the appropriate post-trial motion. Once final, the judgment is properly given preclusive effect as to the issues actually litigated. But these principles do not necessarily apply to a consent judgment. The issue of full damages generally has not been litigated when a consent judgment is entered and, as we have previously pointed out, the parties may or may not agree that the amount being entered by consent represents the plaintiff's full claim for damages. Thus, we conclude that the *Grantham* Court erred in refusing to consider the actual intent of the parties before giving nonmutual collateral estoppel effect to the consent judgment.

---

**8.** *See Restatement (Second) of Torts* § 886 (1979) and *Restatement (Second) of Judgments* § 50 (1982).

It is not clear whether the Court in *Bell v. Allstate Insur. Co.*, 265 Md. 727, 291 A.2d 478 (1972), also refused to examine the intended effect of the consent judgment before affording it nonmutual preclusive effect. Under the particular circumstances of *Bell*, the parties may well have agreed to enter the consent judgment for an amount they believed would fairly represent the complete equivalent of the plaintiff's damages, and in that event the decision would be entirely correct.

The significance of affording preclusive effect to an earlier judgment for damages lies in the enforcement of the commendable rule that a person should receive only one full satisfaction for an injury. As this Court said in *Lanasa v. Beggs, supra*, 159 Md. at 320, 151 A. 21, "[i]t is neither just nor lawful that there should be more than one satisfaction for the same injury, whether that injury be done by one or more." The result we reach today is entirely in keeping with that principle. If the $300,000.00 [9] accepted by the Welshes from Voigt was not intended by the parties to that settlement to represent a full recovery of the plaintiffs' damages, the plaintiffs may proceed against Gerber and the other defendants. Any judgment the plaintiffs may recover against those defendants will be reduced by the $300,000.00 previously received, or proportionately, whichever is greater, provided Voigt is shown to have been a tort-feasor. *Martinez v. Lopez*, 300 Md. 91, 100–01, 476 A.2d 197 (1984). Thus, by operation of law, the plaintiff is precluded from obtaining an unjust recovery from the responsible parties.

Courts look with favor upon the compromise or settlement of law suits in the interest of efficient and economic administration of justice and the lessening of friction and acrimony. *Chertkof v. Harry C. Weiskittel Co.*, 251 Md. 544, 550, 248 A.2d 373 (1968). We think that the position we now take with respect to the preclusive

---

9. In addition to the $290,423.00 paid in connection with the structured settlement, Voigt's insurer had previously paid the Welshes $9,577.00 in settlement of property damages.

effect to be given to consent judgments will promote the settlement of cases. A defendant who insists upon the protection of a consent judgment because of the minority of a plaintiff or for other reasons may settle his case and, provided the parties are careful to properly document their true intentions and to follow the requirements of the Uniform Contribution Among Tort–Feasors Act, the plaintiff may still pursue a full recovery by proceeding against others who may be responsible for his injury.

In the instant case, it would appear that the consent judgment was simply a part of a joint tort-feasor settlement, entered for the protection of Voigt because one of the plaintiffs was a minor. It further appears that the express and articulated intent of the parties to the settlement was that the judgment would *not* have nonmutual collateral preclusive effect on the issue of damages. If that is so, the consent judgment is no bar to the proceedings against Gerber. At argument before us, however, Gerber suggested that the entry of the consent judgment may not have been a part of the joint tort-feasor settlement, but may have represented a new method of settlement intended to supplant the original joint tort-feasor release. Specifically, Gerber argued that Voigt stood to gain potentially valuable rights of contribution against other tort-feasors, and could avoid any possible action against him for indemnity, by insisting upon the entry of a judgment that finally litigated the issue of damages. Thus, Gerber posits, Voigt may have insisted upon the entry of a judgment in which the Welshes agreed that the amount represented the total value of their claim. We have difficulty reconciling Gerber's argument with the joint tort-feasor release that was executed on the day judgment was entered in this case. Similarly, we have difficulty squaring Gerber's argument with the fact that counsel for the Welshes stated in open court at the time the consent judgment was entered that "we are accepting the policy limits without prejudice to any rights we have against other individuals, or insurance carriers." Resolu-

tion of this dispute, however, is not for us, but for the certifying court.

CERTIFIED QUESTION ANSWERED AS SET FORTH ABOVE. COSTS IN THIS COURT TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.