**BRITAMCO UNDERWRITERS, INC. Plaintiff,**

v.

**NISHI, PAPAGJIKA & ASSOCIATES, INC., et al. Defendants.**

No. CIV. A. 97–0257.

United States District Court, District of Columbia.

Sept. 23, 1998.

Craig D. Roswell, R. Wayne Pierce, V. Timothy Bambrick, Niles, Barton & Wilmer, Baltimore, MD, for Plaintiff.

Jeffrey David Goldstein, Stein, Sperling, Bennett, Rockville, MD, Henry St. John Fitz-Gerald, Arlington, VA, Mark London, London & Mead, Washington, DC, for Defendants.

## MEMORANDUM

JUNE L. GREEN, District Judge.

Before the Court are Defendant American Hellenic Educational and Progressive Association's ("AHEPA") Motion for Summary Judgment on its Counter–Claim and on the Declaratory Judgment Complaint of Plaintiff Britamco Underwriters, Inc. ("Britamco"), Britamco's Opposition thereto, and AHEPA's Reply. For the reasons set forth below, AHEPA's motion is denied.

## BACKGROUND

This declaratory judgment action involves a dispute over insurance coverage. It is related to an earlier case before this Court in which AHEPA, a charitable fraternal organization, sued the accounting firm of Nishi, Papagjika, and Associates ("NPA") and Certified Public Accountants Paul Papagjika ("Papagjika") and John Reger ("Reger"), for professional malpractice ("tort suit"). AHEPA now seeks from Britamco, the insurer of the defendants in the tort suit, payment of the $1,000,000 judgment returned in AHEPA's favor in that suit. The facts giving rise to the tort suit and the developments during the course of that litigation are set forth in detail below.

In 1993, AHEPA retained NPA to conduct an audit of the organization for that fiscal year. (Def.'s Ctr–Clm. ¶ 2). Following the audit, AHEPA discovered irregular bank account ledgers and discrepancies in accounting records and membership lists that revealed large sums of money had been embezzled by AHEPA employees in 1992 and 1993. Id. AHEPA filed a Complaint asserting counts of negligence and breach of contract against NPA, Papagjika, and Reger for their failure to uncover the embezzling scheme in the 1993 audit. (Pf.'s Compl. ¶ 10). Pursuant to the defendants' Accountants Professional Liability Policy ("insurance policy"), Britamco selected and paid for defense counsel in the case. (Def.'s Ctr–Clm. ¶ 7).

The Court set November 30, 1996, as the deadline for discovery completion but later extended it to December 20, 1996. (Sch. Order of 5/14/96; Amended Sch. Order of 11/27/96). On December 18—two days before the close of discovery, six weeks before the scheduled trial date, and more than one year after the filing of the original complaint—AHEPA filed a motion for leave to amend its complaint to add counts of fraud and civil conspiracy. (AHEPA Mtn. of 12/18/96). The Court denied the motion on grounds of undue delay and potential prejudice to the Defendant's case, noting that the "proposed amendments concerning conspiracy and fraud would change the very nature of this case from a theory of negligence to one where intent would become a key element of the alleged wrongs." (Order of 1/14/97 at 2).

On January 21, 1996, Defendants NPA, Papagjika and Reger filed a motion for a continuance of the upcoming trial, claiming that their insurance carrier (Britamco) intended to file a declaratory judgment action to determine the extent, if any, of insurance coverage for the claims underlying the tort suit. (NPA Mtn. of 1/21/97 ¶¶ 2–3). The defendants maintained that Britamco's unexpected claim of potential non-coverage triggered the need for Papagjika and Reger to retain individual counsel to protect against suddenly more significant personal liability. (NPA. Mem. Supp. Mtn. Cont. at 4). AHEPA opposed the continuance. (AHEPA Mtn. of 1/23/97). It argued that the request to stay the trial pending a separate action resolving issues of intent patently contradicted NPA's earlier opposition—based in large part on the rapidly approaching trial—to allowing amendments to the Complaint which would have introduced the exact same issues of intent. (AHEPA Mtn. of 1/23/97 at 2–3). AHEPA in fact noted that "under Maryland practice, declaratory judgment actions such as this customarily are not filed until after trial." (AHEPA Mtn. of 1/23/97 at 3).

The Court denied NPA's request for a continuance because the tort suit involved specific claims of accounting malpractice and negligence distinct from the questions of in-

tentional fraud which would determine liability under the insurance policy. (Order of 1/27/97 at 2). Papagjika's and Reger's claims regarding the need for new counsel were met with particular circumspection, as the Court recalled an August 1996 sanctions hearing at which defense counsel averred that all issues with respect to his representation of the defendants had been resolved and the case would proceed without delay. (Order of 1/27/97 at 2–3). The Court's decision to deny the continuance was fortified by the fact that the declaratory judgment action alluded to had not yet been filed. *Id.*

The trial in the tort suit went forth as scheduled, with testimony and evidence limited to that which pertained to negligent, rather than intentional or conspiratorial, practices and conduct. The jury, instructed to consider the sole question of negligence, awarded $1,000,000 to AHEPA. This Court's judgment on the verdict was later affirmed on appeal. *American Hellenic Educ, Progressive Assoc. v. Nishi, Papagjika, & Assoc., P.C.*, 159 F.3d 635, 1998 WL 104581 (D.C.Cir.1998).

## II. Discussion

### A. Jurisdiction and Choice of Law

Jurisdiction in this case is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332 and the declaratory action remedy provided by 28 U.S.C. § 2201. A federal court deciding a diversity case must apply the conflicts of law principles of the forum in which it sits. *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1129–30 (D.C.Cir. 1989). In the District of Columbia, these principles direct the Court to weigh the interests of each jurisdiction involved in the dispute and apply the law of the forum with the greatest interest. *Greycoat Hanover F Street, L.P. v. Liberty Mut. Ins. Co.*, 657 A.2d 764, 767–8 (D.C.1995).

■ The Court finds that Maryland's interest is paramount here. NPA, Papagjika, and Reger conducted the business which was the subject of the insurance policy at their offices in Maryland and the policy was effectuated in Maryland. (*See* Policy Declarations page, noting "Inception: 12:01 A.M. Standard Time at the Address of the Named Insured as Stated Herein."). Similarly, the endorsement of the increase in limits of liability became effective in Maryland. (*See* Endorsement effective 1/1/94 and dated 1/15/94). The premiums and policy applications were mailed to a Maryland location, completed there, and then mailed back to Florida. (Pf.'s Mtn. Supp. Summ. J. at 12). Furthermore, the record from the tort suit reflects that while field work for the auditing occurred at AHEPA's office in the District of Columbia, the statistical tabulations, verification of documents, and issuance of audit reports and related letters occurred in Maryland. (*See* Transcript of Trial, 2/11/97, at 13–19). Finally, AHEPA has stipulated that the policy was made effective in Maryland and Britamco has not provided any evidence to contradict that assertion.[1] (Def.'s Stm. of Undisp. Facts). That field work occurred at AHEPA's office in the District of Columbia and the policy was drafted in Florida are not considerations sufficient to override Maryland's interest in litigation concerning an insurance policy made effective, paid for, and practiced under within Maryland.

### B. Standing

■ Next, Britamco claims that AHEPA does not have standing to sue Britamco directly for the $1,000,000 judgment. This assertion is incorrect. It is a well-established principle of contract law that "the right of the injured claimant to collect from the insurer of the one who harmed him derives from the contract right of the tortfeasor to have the insurer pay for him … what otherwise he would be liable to pay." *Travelers Ins. Co. v. Godsey*, 260 Md. 669, 273 A.2d 431, 434 (1971). Furthermore, Section 5(F) of the insurance policy—'Action Against Company'—specifically recognizes the potential for third party standing. (*See* Policy § 5(f), stating "No action shall lie against the Company by any person or organization unless, as a

---

1. In fact, the vast majority of authority relied upon by Britamco in its arguments is Maryland case law.

condition precedent thereto, there shall have been ... [a] final[ ] determin[ation] after actual trial or by written agreement [regarding liability]."). Finally, the Maryland Insurance Code provides that "any person claiming, by, through, or under the insured" may maintain an action against the insurer "under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy." Art. 48A, Anno.Code of Md. § 481. As the victim of the insured accountants' negligence, AHEPA clearly meets these criteria.

## C. Summary Judgment

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the material presented in the light most favorable to the non-moving party, *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and resolve all doubts as to facts or the existence of facts against the moving party. *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

AHEPA's motion for summary judgment seeks a declaration that Britamco is liable to AHEPA for $1,000,000. AHEPA invokes the doctrines of waiver, election, estoppel, and issue preclusion as bars to Britamco's "intentional acts" and "policy limits" defenses. Britamco contends that AHEPA's motion is premature, that further discovery is necessary, and that a plethora of disputed facts mandate a trial. Resolving all doubts as to the existence of facts against the moving party, the Court concludes that it must deny summary judgment because AHEPA has failed to carry the heavy burden of showing that there are no genuine issues for trial. As the following analysis is equally applicable to both the "intentional acts" and "policy limits" defenses, the Court addresses them jointly, starting with the question of issue preclusion

and then addressing collectively the issues of waiver, estoppel, and election.

### 1. Issue Preclusion

At issue in this case is whether the accountants breached the "Exclusions" provision of the insurance policy, which states that coverage "does not apply to any claim ... arising from a fraudulent criminal or malicious act, error or omission, or from an intentional act, error or omission, whether or not damage was intended." (Policy, Section II(C)).

■ AHEPA contends that a conflict of interest arose during the tort suit litigation which required that Britamco provide the accountants with the option to retain independent counsel or remain bound in the future to the issues decided in the suit. AHEPA relies upon *Brohawn v. Transamerica* in support of this argument. 276 Md. 396, 347 A.2d 842 (1975). In *Brohawn,* the court held that an insurer defending in a tort suit will be bound by the findings of the suit *if an actual conflict develops between it and the insureds,* and the insurer fails to provide the insureds with independent counsel. *Id.* at 852 (emphasis added). The interests of the insureds and insurers diverged in *Brohawn,* creating a conflict because counts of negligent injury and intentional assault were both presented at the tort trial. In such a situation, clearly "[the insured] would want a finding that liability [was] based upon ... negligent conduct, obligating the insurer to indemnify ... [while] the insurer, on the other hand, would desire a finding that the injuries were caused by the insured's intentional conduct, thus releasing it from any duty to idemnify under the policy exclusion." *Id.* at 851.

*Brohawn,* however, is not on point here. In the AHEPA tort suit the jury could not have found that the plaintiff's damages were caused by intentional acts because the issues at trial were limited to negligence. In contrast to the conflict in *Brohawn,* the accountants and Britamco shared a joint interest in having counsel defend vigorously against the negligence claim. An *actual conflict* simply could not arise given the counts presented. As such, *Brohawn* does not control this case.

Moreover, in another Maryland case on this issue, *Allstate v. Atwood,* 319 Md. 247, 572 A.2d 154, 160 (1990), the Court of Appeals directed trial courts first to determine, whether the intentional/negligence issue was fairly litigated in the tort case and advised that relitigation is permissible if the issues in the tort suit were not fairly tried. *Id.*

Here, there can be no dispute that the intent issue was never presented at the earlier trial and therefore was never litigated or resolved. *See also Medical Mut. Liab. Ins. Soc'y of Md. v. Azzato,* 94 Md.App. 632, 618 A.2d 274 (1993) (holding that a finding of medical malpractice in a personal injury action could not resolve coverage questions because questions of intent and criminal acts were not, and could not, have been resolved at trial). Accordingly, issue preclusion is not appropriate in this instance.

**2. Waiver, Estoppel and Election**

 AHEPA has a stronger claim under the doctrines of estoppel, waiver, and election. The law of Maryland is in accord with most jurisdictions in that the right of an insurer to raise a coverage defense may be lost if it is not adequately reserved. *St. Paul Fire & Marine Ins. Co. v. Molloy,* 291 Md. 139, 433 A.2d 1135, 1138 (1981). The concepts of estoppel, waiver, and election, while technically distinguishable,[2] share the common effect of barring an insurer who has knowledge of facts that would exclude coverage, from seeking to avoid liability on non-coverage grounds after acting as though the policy were in force. *Travelers Ins. Co. v. Godsey,* 260 Md. 669, 273 A.2d 431, 434, 435 (1971). Insofar as these issues have not yet been litigated, however, AHEPA may only prevail on its motion for summary judgment if it puts forth uncontradicted evidence that

Britamco (1) knew that the accountants breached the insurance policy and (2) failed to give notice or adequately reserve its rights to either the "intentional acts" or "policy limits" defenses raised in this action.

With respect to the first, "intentional acts" defense, AHEPA claims that Britamco employees had knowledge of the possibility of fraud some eight months prior to trial and failed adequately and promptly to disclaim liability. AHEPA relies chiefly upon the deposition of Americlaim Adjuster's[3] president, Leonard Levine, in support of this assertion. (*See* Levine Dep. at 30, "I called for the [AHEPA] policy ... called for the file ... called for whatever I could find and I said [to myself] we don't insure thieves.") (Levine Dep. at 30). AHEPA further relies upon adjuster Ellen Goldfinger's testimony, which states that she "formed a belief in the summer or fall of 1996" that Papgjika may have participated in fraud against AHEPA. (Goldfinger Dep. at 179)

Britamco disputes AHEPA's characterization of its agents' testimony and argues that a finding of waiver necessitates distinct evidence of subjective intent. The Court agrees with Britamco in this regard. In the District of Columbia, whether waiver exists is generally a question for the trier of fact. *St. Paul Fire,* 433 A.2d at 1138. Such a finding turns on the intent of the party ostensibly waiving the right, a state of mind which must be culled from the specific facts and circumstances surrounding the purported relinquishment.[4] *Id.*

 In the Court's view, Britamco's contention that its agents "only suspected that the insured had fraudulently misrepresented their knowledge of possible claims, is a question of fact over which reasonable fact-find-

---

2. Estoppel is the doctrine by which a person may be precluded by his act or conduct, or silence if it is his duty to speak, from asserting a right which he otherwise would have had. Black's Law Dictionary 538 (6th ed.1990). Waiver is distinguishable from Estoppel in that it involves voluntary, intentional relinquishment of a known right either by affirmative acts or knowledgeable non-action. *Id.* Under the doctrine of Election, a person must, under a will or other instrument, choose one of two alternative rights or benefits and thereby relinquish the other. *Id.*

3. Americlaim Adjusters, Inc., is the adjusting company that handles Britamco's claims.

4. *See Columbia Cas. Co. v. Columbia Hosp. for Women,* 633 F.Supp. 697, 699 (D.D.C.1986) (denying summary judgment and noting that whether a three-month delay in reserving rights gives rise to estoppel raises a genuine issue of material fact).

ers could differ, particularly in light of the chronology of events in the tort suit litigation." In their motion for a continuance of trial, the accountants explained that the insurance issue had just recently been presented. (NPA Mtn. Of 1/21/97 ¶¶ 2–3). The motion followed directly after AHEPA attempted to amend its complaint to include allegations of fraud and civil conspiracy, an action which likely sent clear signals to Britamco regarding the possible existence of fraud. That Britamco did not pursue suspicions before then may well have been reasonable given that the initial complaint did not allege fraud.

AHEPA also claims that because Britamco did not adequately reserve its rights with respect to the second, "policy limits" defense, it may not now seek to limit its liability to $250,000.00.[5] AHEPA argues that an October 1996 "reservation of rights" letter sent by Britamco to the insureds came too late and points to the testimony of a Britamco employee, Ms. Zimmerman, who testified that she suspected deceit regarding the policy limit increase in May or June 1995 (Zimmerman Dep. at 12).

First, Ms. Zimmerman's testimony that she took notice and informed her supervisor of the close proximity in dates of the policy increase and filing of the AHEPA claim is subject to differing interpretations and could be accorded varying weight by a fact-finder. (Zimmerman Dep. at 12). Moreover, whether the three months that elapsed between Ms. Zimmerman's suspicions and issuance of the October 1996 reservation of rights letter give rise to an estoppel is a genuine, disputed issue over which reasonable minds could differ.

Finally, in light of the public policy implication of extending insurance coverage to fraudulent acts, the Court is particularly hesitant to recognize an estoppel on the basis of the present motions alone. *See generally St. Paul Fire & Marine Ins. Co. v. Molloy*, 291 Md. 139, 433 A.2d 1135, 1139 n. 4 (1981) (disallowing the extension of fire insurance coverage to acts of arson even where an estoppel could be found to exist in light of

public policy implications). It strikes the Court as particularly imprudent and unjust to bar Britamco from litigating its defenses given these considerations.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Defendant's Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure should be denied.

---

5. Britamco alleges that the accountants fraudulently raised the policy limit without informing Britamco about an impending claim of which they had knowledge.